INTERNATIONAL WIRE WORKS, Appellant, vs. HANOVER FIRE INSURANCE COMPANY and others, Respondents.

*December 6, 1938—January 10, 1939.*

The cause was submitted for the appellant on the brief of *Bouck, Hilton, Kluwin & Dempsey* of Oshkosh, and for the respondents on that of *Wolfe & Hart* of Milwaukee.

FAIRCHILD, J. The generally understood meaning of the word "riot" is an assembly of individuals who commit a lawful or unlawful act in a violent or tumultuous manner, to the terror or disturbance of others. The sections of the Wisconsin statutes to which we may look for an interpretation of the word do not conflict with this common meaning. They indicate that the legislature of this state has adopted the definition which is found in most of the authorities.

Sec. 347.02, Stats., declares that if any three or more persons shall assemble in a violent or tumultuous manner to do an unlawful act, or, being together, shall make any attempt or motion toward doing a lawful or unlawful act in a violent, unlawful, or tumultuous manner, to the terror or disturbance of others, they shall be deemed an unlawful assembly, and if they commit such acts in a violent or tumultuous manner to the terror or disturbance of others, they shall be deemed guilty of a riot and shall be punished by imprisonment or fine.

Sec. 66.07 (1), Stats., provides that cities shall be liable for injury to person or property by mob or riot. As a condition precedent to such liability, however, in cases where the injured person has information leading him to anticipate riotous conduct, he is required by sec. 66.07 (4) to inform the authorities immediately. If he has failed to give the required notice, he cannot recover.

Municipalities are required to subdue riots, and it is evident that an element to be considered in fixing the rates of

insurance is the likelihood that prompt action by the police will either prevent or reduce the loss. The risk of injury from acts done by stealth is not the same as the risk of injury from the acts of a group publicly and tumultuously manifesting its purpose and placing in fear other persons who may summon the armed force of government.

The trial court correctly ruled that there was no material distinction between the common meaning of the word "riot" and the definition contained in the statutes. The court was also correct when it said, "The essence of the offense is violence and tumult. . . . There has been a total absence of any proof which would establish riotous destruction of property, and the court must therefore hold for the defendant."

Taken together, the definition of riot in sec. 347.02, Stats., and the imposition of liability in sec. 66.07 leave no room for doubt that the generally accepted definition of riot obtains in this state and that an element which must be included is the terror or disturbance of persons who are not participating in the violent or tumultuous acts. The parties to the insurance contracts upon which the present action is brought contemplated something more than violent acts done by three or more persons in stealth without the knowledge of others who might resist their acts or summon the armed force of the city. Even though there is terror or disturbance at the time that the damage is discovered, a crime committed secretly away from the public view is not a riot. No riot exists in the absence of publicity at the time of the violent or tumultuous acts.

*By the Court.*—Judgment affirmed.