# COURT OF APPEALS OF WISCONSIN
# PUBLISHED OPINION

Case No.:         2019AP1365

†Petition for Review filed

Complete Title of Case:

> **DANELLE DUNCAN,**
>
> **PLAINTIFF-APPELLANT,**
>
> **V.**
>
> **ASSET RECOVERY SPECIALISTS, INC.,**
> **WELLS FARGO BANK, N.A. AND**
> **GREG STRANDLIE,**
>
> **DEFENDANTS-RESPONDENTS. †**

| | |
|---|---|
| Opinion Filed: | July 30, 2020 |
| Oral Argument: | June 22, 2020 |

| | |
|---|---|
| JUDGES: | Blanchard, Graham, and Nashold, JJ. |

| | |
|---|---|
| Appellant ATTORNEYS: | On behalf of the plaintiff-appellant, the cause was submitted on the briefs of and oral argument by *Briane F. Pagel* of *Lawton & Cates, S.C.*, Madison. |
| Respondent ATTORNEYS: | On behalf of the defendants-respondents, the cause was submitted on the brief of and oral argument by *William W. Ehrke* of *Crivello Carlson, S.C.*, Milwaukee. |

# 2020 WI App 54

COURT OF APPEALS
DECISION
DATED AND FILED

July 30, 2020

Sheila T. Reiff
Clerk of Court of Appeals

## NOTICE

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2019AP1365**

STATE OF WISCONSIN

Cir. Ct. No.  2017CV1704

IN COURT OF APPEALS

DANELLE DUNCAN,

   PLAINTIFF-APPELLANT,

V.

ASSET RECOVERY SPECIALISTS, INC.,
WELLS FARGO BANK, N.A. AND GREG
STRANDLIE,

   DEFENDANTS-RESPONDENTS.

APPEAL from a judgment of the circuit court for Dane County: STEPHEN E. EHLKE, Judge. *Reversed and cause remanded for further proceedings.*

Before Blanchard, Graham, and Nashold, JJ.

¶1      GRAHAM, J.  Greg Strandlie, Asset Recovery Specialists, Inc., and Wells Fargo Bank, N.A. (collectively, the defendants) repossessed Danelle Duncan's vehicle while it was parked in the shared garage on the ground floor of her multi-unit apartment complex.  It is undisputed that the defendants had a legal right to repossess the vehicle, but Duncan argues that the way they repossessed it violated WIS. STAT. § 425.206(2)(b) (2017-18).[1]   She also contends that the defendants violated WIS. STAT. § 425.107(1), which prohibits unconscionable conduct directed against a customer.  The circuit court determined that the defendants did not violate § 425.206(2)(b), and on that basis, it granted summary judgment on all claims in the defendants' favor.

¶2      The central issue in this appeal is the proper interpretation of WIS. STAT. § 425.206(2), which prohibits a merchant from "enter[ing] a dwelling used by the customer as a residence" to repossess collateral.  We conclude that the garage in Duncan's apartment building was part of a dwelling she used as a residence. Therefore, the defendants violated § 425.206(2)(b) when they entered the garage, the circuit court erred by granting summary judgment in the defendants' favor, and Duncan is entitled to summary judgment on that claim instead.  We also reverse the court's grant of summary judgment on the WIS. STAT. § 425.107(1) claim because the court's stated reasons no longer apply, and the parties' remaining arguments about unconscionable conduct are undeveloped.  Accordingly, we reverse the order granting summary judgment to the defendants and remand for further proceedings consistent with this opinion.

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

## BACKGROUND

¶3    Duncan purchased a vehicle from a dealership, and she financed the purchase with a loan. The loan contract was ultimately assigned to Wells Fargo Bank (the Bank), and the contract granted the Bank a security interest in the vehicle. Duncan failed to make payments that came due and eventually was in default.

¶4    The vehicle served as collateral for the loan, and Wisconsin law provided the Bank two options for recovering it. The Bank could go to court to obtain a replevin judgment under WIS. STAT. § 425.205. Alternatively, it could follow the procedures for a "nonjudicial" repossession under WIS. STAT. § 425.206(1)(d). The Bank chose the latter option, and it is undisputed that it met all statutory requirements to proceed with nonjudicial repossession.[2] Accordingly, the Bank retained Asset Recovery Specialists, a repossession company owned and operated by Greg Strandlie, to repossess Duncan's vehicle.

¶5    At the time, Duncan rented an apartment unit in a multi-story apartment building. The ground floor of the building consisted entirely of a private parking garage for tenants, and Duncan sometimes kept her vehicle in it.[3]

¶6    When Strandlie arrived to repossess the vehicle, the garage door had been left open and Duncan's vehicle was parked inside. At Strandlie's direction an

---

[2] *See* WIS. STAT. § 425.206(1)(d) (permitting a merchant to repossess a motor vehicle if certain notice requirements are met and the customer does not make a timely demand that the merchant proceed in court); *see also* WIS. STAT. § 425.205(1g) (setting forth those notice requirements). It is undisputed that the Bank provided adequate notice, that Duncan did not demand that the Bank proceed in court, and that Duncan did not cure the default.

[3] The parties dispute various facts about the garage, including the extent to which posted signs restricted entry, the extent to which it was accessible to the general public without a key, and other aspects of its layout. For reasons that will become clear in the discussion section below, none of these factual disputes are material to our interpretation and application of the statute, and we address them no further.

ARS employee drove his tow truck into the garage, hooked up the vehicle, and drove away with it. Neither Strandlie nor the ARS employee had any interaction with Duncan at that time. Strandlie later averred that an apartment building maintenance employee was working in the garage during the repossession, and that he did not object to the repossession.

¶7 In this lawsuit,[4] Duncan alleges various violations of the Wisconsin Consumer Act. Among other claims, she alleges that the defendants violated WIS. STAT. § 425.206(2)(b), which we refer to as her "illegal repossession" claim. She also alleges a violation of WIS. STAT. § 425.107(1), which we refer to as her "unconscionable conduct" claim. The parties filed cross-motions for summary judgment.

¶8 The circuit court determined that all of Duncan's claims depend on whether Strandlie's entry into the garage was lawful under WIS. STAT. § 452.206(2)(b). The court further determined that this issue turns on whether the garage was "primarily or intimately tied to the use of [Duncan's] apartment" and whether she had the "right to exclude others" from the garage. After determining that the garage did not meet these criteria, the court granted summary judgment in the defendants' favor on all claims.

---

[4] Prior to filing this action in state court, Duncan brought a federal action against the same defendants alleging violations of the Fair Debt Collection Practices Act, as well as violations of Wisconsin law. *See Duncan v. Asset Recovery Specialists, Inc.*, No. 16-CV-530-WMC, 2017 WL 2870520 (W.D. Wis. July 5, 2017), *aff'd* 907 F.3d 1016 (7th Cir. 2018). The federal court granted the defendants summary judgment on the Fair Debt Collection Practices Act claim and dismissed Duncan's state claims largely without prejudice. *See id.*

**DISCUSSION**

¶9 Duncan argues that the circuit court erroneously granted summary judgment to the defendants on her illegal repossession and unconscionable conduct claims. "We review de novo the grant of summary judgment, employing the same methodology as the circuit court." *Palisades Collection LLC v. Kalal*, 2010 WI App 38, ¶9, 324 Wis. 2d 180, 781 N.W.2d 503. Summary judgment is appropriate when "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08.

¶10 Here, whether summary judgment should be granted to either party turns on the interpretation and application of statutes, which is also a question of law that we review de novo. *Nowell v. City of Wausau*, 2013 WI 88, ¶19, 351 Wis. 2d 1, 838 N.W.2d 852. When we interpret a statute, we begin with its plain language, and as part of our inquiry, we consider the statute's "scope, context, and purpose." *State ex rel. Kalal v. Circuit Court for Dane Cty.*, 2004 WI 58, ¶¶45, 48-49, 271 Wis. 2d 633, 681 N.W.2d 110.

¶11 We address Duncan's illegal repossession and unconscionable conduct claims in turn.

**I. The Illegal Repossession Claim**

¶12 The central dispute between the parties is whether the defendants violated WIS. STAT. § 425.206(2)(b) when they entered the garage shared by residents in Duncan's apartment building to repossess her vehicle. Section 425.206(2) provides in full:

> In taking possession of collateral or leased goods, no merchant may do any of the following:

(a) Commit a breach of the peace.

(b) Enter a dwelling used by the customer as a residence except at the voluntary request of a customer.

*Id.*

¶13 Whether either party is entitled to summary judgment on this claim turns on the proper interpretation of the statutory phrase "dwelling used by the customer as a residence." The parties agree that the statute does not define this phrase and that no prior case law has interpreted it.[5] Duncan contends that this phrase should be interpreted broadly to include the garage. The defendants disagree. Consistent with the circuit court's reasoning, they point out that Duncan did not live in the garage and did not have the right to exclude others from it. For these reasons, they argue, the garage cannot be considered a "dwelling used by the customer as a residence."

¶14 WISCONSIN STAT. § 425.206(2) is part of the Wisconsin Consumer Act, WIS. STAT. chs. 421-29, which we sometimes refer to as the WCA. We begin our analysis by briefly recounting the history and context of certain provisions in the WCA that are material to our analysis. We then turn our focus to the specific language of § 425.206(2). In the course of interpreting the phrase "dwelling used by the customer as a residence," we separately examine the meaning of the word "dwelling" and the phrase "used by the customer as a residence" that modifies it.

---

[5] All of the cases that we have found that interpret WIS. STAT. § 425.206(2) have considered what it means to "commit a breach of the peace" under paragraph (2)(a). *See, e.g.*, *Hollibush v. Ford Motor Credit Co.*, 179 Wis. 2d 799, 812, 508 N.W.2d 449 (Ct. App. 1993). Duncan does not allege that the defendants breached the peace when they repossessed her vehicle.

## A. The Wisconsin Consumer Act

¶15     The Wisconsin Consumer Act was enacted in 1971 and went into effect two years later in 1973.  *See* 1971 Wis. Act 239.  Two of its stated purposes are "[t]o simplify, clarify and modernize the law governing consumer transactions" and "[t]o protect customers against unfair, deceptive, false, misleading and unconscionable practices by merchants."[6]  WIS. STAT. § 421.102(2)(a), (b).

¶16     There are actually two separate statutes in the WCA that limit merchants from entering dwellings to repossess collateral.  One of the statutes is WIS. STAT. § 425.206(2), the repossession statute that Duncan claims the defendants violated in this case.  The other is WIS. STAT. § 422.419(1)(a), which governs the contract terms that may be included in consumer credit transactions such as Duncan's loan.  These two statutes were enacted by the legislature at the same time as part of the same act, and they use similar language to address separate but closely related contexts.  We briefly summarize both statutes here because, for reasons we explain further below, an understanding of the parallels between them sheds light on the meaning of § 425.206(2).

¶17     The statute at issue in this case, WIS. STAT. § 425.206(2), is part of the subchapter of the WCA that addresses the rights that merchants have to enforce security interests that are granted by consumer credit transactions.  *See* WIS. STAT. ch. 425, subch. II, §§ 425.201-425.210 (entitled "Enforcement of Security Interests

---

[6] The WCA defines "customer" as someone "who seeks or acquires real or personal property, services, money or credit for personal, family or household purposes," WIS. STAT. § 421.301(17), and it defines "merchant" as "a person who regularly advertises, distributes, offers, supplies or deals in real or personal property, services, money or credit in a manner which directly or indirectly results in or is intended or designed to result in, lead to or induce a consumer transaction," § 421.301(25).  It is undisputed that Duncan is a "customer," and none of the defendants argues it is not a "merchant" for the purposes of WIS. STAT. § 425.206(2)(b).  We therefore sometimes refer to Duncan as the "customer" and to the defendants as the "merchants."

in Collateral"). This subchapter regulates the collection actions that a merchant may take when a customer defaults on a loan.

¶18 WISCONSIN STAT. § 425.206, which is entitled "Nonjudicial enforcement limited," sets forth specific rules for repossessing collateral. For most items that serve as collateral, a merchant must first obtain a replevin judgment from a court before it can enforce its security interest in the item. *See* § 425.206(1)(b). There is a narrow exception for motor vehicles: under § 425.206(1)(d), a merchant may repossess a motor vehicle outside of the judicial process so long as the merchant fulfills certain notice requirements.[7] Regardless of which process the merchant uses, § 425.206(2) specifies that a merchant may never "[c]ommit a breach of the peace" or "[e]nter a dwelling used by the customer as a residence" when repossessing an item without the assistance of law enforcement. Courts and commentators have explained that a purpose of these limitations is to reduce the inherent risk of confrontations when a merchant chooses to repossess collateral itself, without involving law enforcement.[8] Although there have been minor amendments to § 425.206(2), the substantive portions of the statute have remained essentially untouched since the WCA was enacted.[9]

---

[7] When the WCA was enacted, the requirement that the merchant first obtain a judgment before enforcing a security interest applied to all property, including motor vehicles. *See* 1971 Wis. Act 239 at 731. The exception for motor vehicles was created by a 2006 amendment. *See* 2005 Wis. Act 255.

[8] *See* **Hollibush**, 179 Wis. 2d at 812; *see also* Jeffery Davis, *Legislative Restrictions of Creditor Powers and Remedies: A Case Study of the Negotiation and Drafting of the Wisconsin Consumer Act,* 72 MICH. L. REV. 1, 42 (1973) (noting that negotiations about this language focused on what would "effectively prevent[] violence….").

[9] The original text was: "In taking possession of collateral, no merchant shall a) commit a breach of the peace, nor b) enter a dwelling used by the customer as his residence except at the voluntary request of a customer." 1971 Wis. Act 239 at 731. The statute has since been amended on several occasions for style and formatting purposes.

¶19 The other statute that limits a merchant's ability to enter a dwelling to repossess collateral is WIS. STAT. § 422.419(1)(a). That statute is part of a subchapter in the WCA that sets limits on the contents of agreements that merchants and customers can make for consumer credit. *See* WIS. STAT. ch. 422, subch. IV, §§ 422.401-422 (entitled "Limitations on Agreements and Practices"). Section 422.419 is entitled "Waivers Prohibited," and it identifies certain provisions that merchants are not allowed to include in any contract for consumer credit. It specifically prohibits any contract provision that would allow "[t]he merchant or other person acting on the merchant's behalf … to enter the customer's dwelling or to commit any breach of the peace in the course of taking possession of collateral securing the transaction." *See* § 422.419(1)(a). As with WIS. STAT. § 425.206(2), § 422.419(1)(a) was part of the WCA as enacted in 1971, and its language has remained essentially the same since that time. *See* 1971 Wis. Act 239 at 715.

¶20 WISCONSIN STAT. § 422.419(1)(a) is not directly at issue in this case because there is no provision in Duncan's loan contract that purports to allow the Bank to enter Duncan's dwelling or to commit any breach of the peace. Nevertheless, as we explain further below, its language provides helpful context that informs our interpretation of WIS. STAT. § 425.206(2).

### B. "Dwelling"

¶21 With this statutory context in mind, we now consider the meaning of the term "dwelling," as that term is used in WIS. STAT. § 425.206(2). The parties disagree about whether and under what circumstances garages are included within its meaning.

¶22 "Dwelling" is not defined in the statutory text of the Wisconsin Consumer Act. However, the Department of Financial Institutions, the

9

administrative agency tasked to administer the WCA and adopt rules to carry out its purposes,[10] has promulgated a definition of "dwelling." WISCONSIN ADMIN. CODE § DFI-WCA 1.392 provides: "For the purposes of s. 422.419(1)(a), Stats., the term 'dwelling' shall include, any garage, shed, barn or other building on the premises whether attached or unattached." We refer to this section of the administrative code as the "regulatory definition," and it has been in force since the WCA went into effect. 210 Wis. Admin. Reg. 72 (June 1, 1973).

¶23 At the time the legislature enacted the WCA, it specified that "[a] reference to a provision of [the WCA] includes reference to a related rule or order of the [Department of Financial Institutions] adopted under [the WCA]." WIS. STAT. § 421.102(3); *see also **Kranzush v. Badger State Mut. Cas. Co.***, 103 Wis. 2d 56, 77-78, 307 N.W.2d 256 (1981) ("[A]dministrative rules enacted pursuant to statutory rule-making authority have the force and effect of law."). When a statute specifically defines one of its terms, we use that definition. ***Kalal***, 271 Wis. 2d 633, ¶45; *see also **id.***, ¶46 ("statutory language is interpreted in the context in which it is used" and "in relation to surrounding or closely-related statutes"); ***State v. Busch***, 217 Wis. 2d 429, 441, 576 N.W.2d 904 (1998) (explaining that courts construe regulations "together with the statute to make, if possible, an effectual piece of legislation in harmony with common sense and sound reason"). Thus, the term "dwelling" expressly includes any garage "on the premises," whether attached or not—at least for the purposes of WIS. STAT. § 422.419(1)(a).

¶24 In their arguments before the circuit court and in their briefing on appeal, the parties did not address the regulatory definition of "dwelling," nor did

---

[10] *See* WIS. STAT. §§ 426.103 & 426.104 (granting the "secretary of financial institutions" the authority to enforce the WCA); § 426.104(e) (granting the Department of Financial Institutions the authority to make rules to carry out the WCA's "purposes and policies").

they address the relationship between WIS. STAT. §§ 425.206(2) and 422.419(1)(a). Instead, the parties focused on how the term "dwelling" is used in other Wisconsin statutes outside of the WCA, and on case law from other states.[11] We asked the parties to address the regulatory definition of "dwelling" during oral argument.

¶25 The defendants argue that the regulatory definition has no bearing on the interpretation of WIS. STAT. § 425.206(2). They point to the introductory language in WIS. ADMIN. CODE § DFI-WCA 1.392 stating that "dwelling" is defined "[f]or the purposes of s. 422.419(1)(a)," and they contend that the definition is expressly limited in scope to that specific statute.

¶26 We disagree. To be sure, all things being equal, introductory language specifying that a word is defined "for the purposes of" one statute might weigh against using that same definition in a different context. *See Kalal*, 271 Wis. 2d 633, ¶46 ("Statutory language is read where possible to give reasonable effect to every word, in order to avoid surplusage."). However, the introductory language does not state that the regulatory definition is to be used *exclusively* for purposes of WIS. STAT. § 422.419. Generally, "[w]hen a word is used multiple times in the same enactment," we "attribute the same meaning to the word each time," *State v. Matasek*, 2014 WI 27, ¶12, 353 Wis. 2d 601, 846 N.W.2d 811, unless "context clearly requires" the word to have a different meaning, *General Castings Corp. v. Winstead*, 156 Wis. 2d 752, 759, 457 N.W.2d 557 (Ct. App. 1990).

---

[11] For example, Duncan references the definition of "dwelling" in WIS. STAT. § 895.07(1)(h), a statute outside the WCA concerning construction defects, and the defendants reference cases from other states considering whether entry into a garage constitutes a breach of the peace, such as *Ford Motor Credit Co. v. Ryan*, 2010-Ohio-4601, ¶¶34-36, 189 Ohio App. 3d 560, 939 N.E.2d 891 (concluding that a repossessor's entry into an open garage is not necessarily a breach of the peace). As we explain below, our analysis of the language of WIS. STAT. § 425.206(2), placed within the context of other closely related provisions, is dispositive. Accordingly, we do not address the other authorities raised by the parties' arguments.

¶27 Here, based on context, we are not persuaded that the legislature intended "dwelling" to have one meaning in WIS. STAT. § 422.419(1)(a) and a different meaning in WIS. STAT. § 425.206(2). As discussed above, the two statutes were enacted at the same time as part of the original WCA, and they are closely related. Section 425.206(2) is meant to prevent confrontations between merchants and customers by prohibiting merchants from entering certain "dwellings" or committing a "breach of a peace" when repossessing collateral. Likewise, § 422.419(1)(a) prohibits merchants from enforcing any contract provision that would allow them to enter certain "dwellings" or commit a "breach of a peace" in that same situation. The close relationship between these two statutes is reinforced by the title of WIS. STAT. § 422.419, "Waivers prohibited."[12] Reading these two statutes together, it is apparent that the right that § 422.419(1)(a) prohibits customers from waiving is the right to be free from certain repossession methods— that is, the same right set forth in WIS. STAT. § 425.206(2).

¶28 Thus, the two statutory sections appear to be two sides of the same coin. WISCONSIN STAT. § 425.206(2) limits the methods merchants may use to repossess collateral, and WIS. STAT. § 422.419(1)(a) prohibits merchants from contracting with their customers to waive those statutory limitations.

¶29 In sum, apart from pointing to the introductory language in the regulatory definition, the defendants offer no reason why "dwelling" should have different meaning in these closely related statutes, and we see none. Reading "dwelling" as the defendants do would complicate the law to no apparent end,

---

[12] A waiver is a "voluntary relinquishment" of a "legal right." *Waiver*, BLACK'S LAW DICTIONARY (11th edition 2019). "Although titles are not part of statutes … they may be helpful in interpretation." *State v. Grandberry*, 2018 WI 29, 380 Wis. 2d 541, 556 n.13, 910 N.W.2d 214 (quoting *Aiello v. Pleasant Prairie*, 206 Wis. 2d 68, 73, 556 N.W.2d 697 (1996)).

despite the fact that the WCA is to be construed liberally to "simplify" and "clarify" consumer transaction law. WIS. STAT. § 421.102(2)(a). We agree with Duncan that "dwelling," as that term is used in WIS. STAT. § 425.206(2), includes "any garage, shed, barn or other building on the premises whether attached or unattached." WIS. ADMIN. CODE § DFI-WCA 1.392.

¶30  We also agree with Duncan that the garage on the ground floor of her apartment building was part of her "dwelling." There can be no dispute that her specific unit was part of her dwelling, and as we have explained, the definition of "dwelling" also includes "any garage … on the premises whether attached or unattached." *See id.* We need not decide what the phrase "on the premises" could mean in other cases, since it is clear that the garage in Duncan's apartment building was "on the premises" of her apartment unit.[13] If a garage can be "on the premises" even if it is unattached, a garage that *is* within the same structure is certainly "on the premises" for the purposes of WIS. STAT. § 425.206(2).

### C.  "Used by the Customer as a Residence"

¶31  As shown above, WIS. STAT. § 425.206(2) does not prohibit merchants from entering any dwelling; rather, it prohibits merchants from entering a "dwelling used by the customer as a residence." Thus, the term "dwelling" is modified by the phrase "used by the customer as a residence." The parties have offered several possible interpretations of this phrase.

¶32  For their part, the defendants argue that even if the garage in Duncan's apartment building was part of her "dwelling," it was not "used by the customer as

---

[13]  Although asked to discuss WIS. ADMIN. CODE § DFI-WCA 1.392 at oral argument, the defendant made no argument that the garage in Duncan's apartment building was not "on the premises," instead maintaining only that the regulatory definition does not apply.

a residence." According to the defendants, the garage is excluded from the protections of WIS. STAT. § 425.206 because Duncan lacked the authority to exclude others from it and did not use it as a living quarters.

¶33 We reject any proposed interpretation of this phrase that turns on considerations of ownership or the right to exclude.[14] There is no language in the statute that supports this interpretation. If the legislature had intended to differentiate between the portions of a dwelling where the customer has the right to exclude others and other portions of the dwelling where the customer does not, it could have easily said so. Instead, the legislature selected the phrase "used by the customer as a residence."

¶34 We now turn to the defendants' argument that this phrase narrows the protections of WIS. STAT. § 425.206(2) to the portion of a multi-unit dwelling that the customer actually uses as living quarters. According to the defendants, a "dwelling that is used by the customer as a residence" is "where someone actually lives" and would necessarily "have a bathroom, a place to sleep, a place to cook, a place to eat, an area to bathe, and would have to contain furniture—or at least some combination of these items." It became clear during oral argument that this is the defendants' primary argument.

---

[14] As persuasive authority for this interpretation, the defendants rely on *United States v. Sweeney*, 821 F.3d 893 (7th Cir. 2016), but *Sweeney* does not address the WCA or any other Wisconsin statute governing the relationship between merchants and customers. *Sweeney* is a criminal case that considered whether, under the Fourth Amendment, the defendant's reasonable expectation of privacy from police interference extended to a basement in his apartment building to which tenants had shared access. *Id.* at 899-903. We see no reason to look to the Seventh Circuit's interpretation of the Fourth Amendment when we could instead look to the statutory and regulatory language of the WCA. *See State ex rel. Kalal v. Circuit Court for Dane Cty.*, 2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110 ("Judicial deference to the policy choices enacted into law by the legislature requires that statutory interpretation focus primarily on the language of the statute.").

¶35      This interpretation of the phrase "used by a customer as a residence" may have appeared reasonable as it was originally presented to the circuit court, devoid of the statutory and regulatory context we have discussed above. However, we interpret statutes in context, and once this context is considered, the reasonableness of the defendants' interpretation falls apart. As explained above, the protections of WIS. STAT. § 425.206(2) extend to at least some garages that are "on the premises." When asked during oral argument whether a garage on the premises of a multi-unit building could ever be protected by the statute, the defendants suggested that the answer would turn on the presence of items such as furniture or appliances in the garage. They acknowledged that merchants would be required to conduct an on-the-scene evaluation of the "indicia of residential use" to determine whether they could enter a garage on the premises of a multi-unit building to repossess a vehicle without violating § 425.206(2).

¶36      We reject this proposed interpretation because it is contrary to the express purposes of the WCA and could lead to absurd results. *See **Kalal***, 271 Wis. 2d 633, ¶46 (we interpret statutes "to avoid absurd or unreasonable results"); ***id.***, ¶56 (rejecting an interpretation that "is contrary to and could defeat the purpose of the statute"). Among other things, an interpretation that turned on "indicia of residential use" might allow a merchant to enter a customer's home to repossess collateral if that home was unfurnished, but prohibit entry into an open garage attached to that same home if the garage had a cot and a lamp in it. As explained above, one of the WCA's express purposes is "[t]o simplify, clarify and modernize the law governing consumer transactions." WIS. STAT. § 421.102(2)(a). Any interpretation that required merchants to make case-by-case determinations about

whether any given portion of a dwelling appears to be a living quarters would instead obfuscate the law.[15]

¶37 We now turn to Duncan's interpretation of the phrase "dwelling used by the customer as a residence." Duncan contends that the legislature used this phrase to specify that it is *the customer's dwelling* that the merchant may not enter. According to Duncan, the rule is straightforward: a merchant may not enter the customer's dwelling, but the merchant does not violate the WCA if it enters some *other person's dwelling* in the course of a repossession. We conclude that Duncan's interpretation is supported by the language of the statute, and it would also advance the WCA's purpose of simplifying and clarifying the law.

¶38 Not only is Duncan's interpretation the only reasonable interpretation advanced by the parties, but it also harmonizes the prohibitions in WIS. STAT. §§ 425.206(2) and 422.419(1)(a). *See **Muskego-Norway Consol. Sch. Joint Sch. Dist. No. 9 v. Wisconsin Employment Relations Bd.***, 35 Wis. 2d 540, 556, 151 N.W.2d 617 (1967) ("Construction of statutes should be done in a way which harmonizes the whole system of law of which they are a part, and any conflict should be reconciled if possible."). As we have discussed, § 425.206(2) prohibits

---

[15] We also reject this interpretation because, as explained in ¶40, *infra*, any interpretation of WIS. STAT. § 425.206(2)(b) that excluded a garage "on the premises" of the customer's dwelling would render some of the protections set forth in WIS. STAT. § 422.419(1)(a) meaningless.

During oral argument, the defendants suggested that, as matter of common sense, barring merchants from entering the garage in Duncan's apartment building would not advance the purpose of preventing confrontations. They posited that a customer who lives in a multi-unit building would be less likely to notice a merchant entering the garage to repossess the vehicle than a customer who lives in a single-family residence with an attached garage. We are not persuaded that the risk of multi-unit building garage confrontations is so minimal that the legislature could not have endeavored to prevent them. We have no reason to believe that customers who reside in multi-unit buildings enter their garages any less often than customers who reside in single-family homes. Additionally, to cite two obvious considerations, customers in multi-unit buildings may have windows that would allow them to see a tow truck entering a garage, or the customer's neighbors in the building might notice the repossession and alert the customer.

merchants from entering a "dwelling used by the customer as a residence" to repossess a vehicle, and § 422.419(1)(a) prohibits any contract provisions that would allow merchants to enter "the customer's dwelling" to carry out a repossession. Under Duncan's interpretation, the limits set forth in § 425.206(2) are the same limits that cannot be waived in § 422.419(1)(a).

¶39 The defendants urge us to give the phrase "dwelling used by the customer as a residence" a narrower meaning than the phrase "the customer's dwelling." During oral argument, the defendants pointed to another WCA provision, WIS. STAT. § 421.201(8), which provides that "the residence of the customer is the address given by the customer as his or her residence in any writing signed by the customer in connection with a consumer transaction," and that the "given address is presumed to be unchanged until the merchant knows or has reason to know of a new or different address." We take the defendants to be arguing, based on § 421.201(8), that "dwelling used by the customer as a residence" means the part of Duncan's dwelling that is identifiable as her "address." Because Duncan's address includes her apartment unit number, the defendants contend that the protections of WIS. STAT. § 425.206(2) should extend only to that unit, and not to any shared portion of the apartment building.

¶40 We are not persuaded. Setting aside any other problems with this argument, we reject it because it would render another part of the WCA meaningless. Again, WIS. STAT. § 422.419(1)(a) prohibits contract terms that allow a merchant to enter a garage on the premises of "a customer's dwelling." But that prohibition would lose all meaning if merchants could enter those same garages without the assistance of law enforcement to repossess a vehicle under WIS. STAT. § 425.206(2). We avoid interpretations that would "render provisions

meaningless," ***Belding v. Demoulin***, 2014 WI 8, ¶17, 352 Wis. 2d 359, 843 N.W.2d 373, or lead to "unreasonable results," ***Kalal***, 271 Wis. 2d 633, ¶46.[16]

¶41    For all of the reasons given above, we agree with Duncan's interpretation of the statute and conclude that the garage in her apartment building was part of the "dwelling used by the customer as a residence."  Apart from their interpretation of WIS. STAT. § 425.206(2), which we have rejected, the defendants do not assert that there is any issue of material fact that would preclude summary judgment on the illegal repossession claim in Duncan's favor.  Accordingly, we conclude that Duncan is entitled to summary judgment on her illegal repossession claim.

## II.  The Unconscionable Conduct Claim

¶42    We now turn briefly to the remaining issue, Duncan's claim that the defendants' conduct violated WIS. STAT. § 425.107(1) because it was unconscionable.  The circuit court granted summary judgment on this claim in the defendants' favor, and the parties dispute whether the court erred in doing so.  For reasons we now explain, we reverse the grant of summary judgment without resolving the parties' arguments about the merits of this claim, and we remand for further proceedings on these issues in the circuit court.

¶43    As we understand it, Duncan's claim is two-fold.  First, she contends that a merchant's violation of WIS. STAT. § 425.206(2)(b) is by itself

---

[16] We recognize that "we generally interpret the use of differing language in similar or related sections as intending a different meaning," ***Borek Cranberry Marsh, Inc. v. Jackson Cty.***, 2010 WI 95, ¶29, 328 Wis. 2d 613, 785 N.W.2d 615, and that our conclusion interprets two slightly different phrases ("customer's dwelling" and "dwelling used by the customer as a residence") to mean essentially the same thing.  However, the canon of construction discussed in ***Borek Cranberry Marsh*** is not absolute, and we need not apply it where, as here, context requires a different result.  *See **id.***

unconscionable conduct prohibited by WIS. STAT. § 425.107(1). Second, she contends that, in addition to the facts showing that the defendants violated § 425.206(2)(b), other facts in the record also preclude summary judgment on her unconscionable conduct claim. For their part, the defendants dispute that any of their conduct violated WIS. STAT. § 425.107(1). They do not appear to specifically address Duncan's argument that a violation of WIS. STAT. § 425.206(2)(b) is itself unconscionable conduct, and instead rely on the premise that they did not violate that statute.

¶44     As explained above, the circuit court's determination that Duncan's unconscionable conduct claim could not survive summary judgment was based solely on its conclusion that the defendants' entry into Duncan's garage was lawful. We have reached the opposite conclusion on the illegal repossession claim, and therefore, the circuit court's reason for granting summary judgment on the unconscionable conduct claim no longer applies. We do not decide whether it might be appropriate to grant summary judgment to the defendants on the unconscionable conduct claim, as they request, for other reasons. These proceedings, including this appeal, have focused almost exclusively on the question of whether the defendants violated WIS. STAT. § 425.206(2)(b). As a result, the parties' arguments on the separate question of the interpretation and application of WIS. STAT. § 425.107(1) are undeveloped and ignore certain consequential issues.[17] On remand, the parties and the circuit court are free to address the appropriate disposition of Duncan's

---

[17] For example, some Wisconsin federal district courts have concluded that a plaintiff cannot bring a freestanding claim for a violation of WIS. STAT. § 425.107(1), and instead that unconscionability can be used only as a defense in an action brought by a merchant. *See Gable v. Universal Acceptance Corp. (WI)*, 338 F. Supp. 3d 943, 956 (E.D. Wis. 2018) ("Three separate courts have now held that [§ 425.107] provides a defense to an action brought by a creditor and does not constitute an affirmative claim for relief."). The parties did not raise this issue before the circuit court or in their appellate briefs, and we do not resolve this issue in this opinion.

unconscionable conduct claim now that we have resolved the dispute pertaining to § 425.206(2)(b).

¶45    Accordingly, we reverse the circuit court's grant of summary judgment on Duncan's unconscionable conduct claim because it was solely based on an erroneous interpretation of WIS. STAT. § 425.206(2)(b). Nothing in this opinion should be read to foreclose the possibility that the defendants might be entitled to summary judgment on that claim for other reasons.

## CONCLUSION

¶46    For the reasons stated above, we reverse the circuit court's grant of summary judgment to the defendants on Duncan's illegal repossession and unconscionable conduct claims. We conclude that Duncan is entitled to summary judgment in her favor on the illegal repossession claim, and we make no decision about the appropriate disposition of the unconscionable conduct claim. We remand for further proceedings consistent with this opinion.

*By the Court.*—Judgment reversed and cause remanded for further proceedings.