# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2019AP1365 |

| | |
|---|---|
| COMPLETE TITLE: | Danelle Duncan,<br>　　　　Plaintiff-Appellant,<br>　　　v.<br>Asset Recovery Specialists, Inc., Greg Strandlie and Wells Fargo Bank, N.A.,<br>　　　　Defendants-Respondents-Petitioners. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 393 Wis. 2d 814,948 N.W.2d 419
PDC No:2020 WI App 54 - Published

| | |
|---|---|
| OPINION FILED: | January 6, 2022 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | September 15, 2021 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Dane |
| JUDGE: | Stephen E. Ehlke |

JUSTICES:

DALLET, J., delivered the majority opinion of the Court with respect to all parts except ¶¶29, 31-34, in which ANN WALSH BRADLEY, HAGEDORN, and KAROFSKY, JJ., joined, and an opinion with respect to ¶¶29, 31-34, in which ANN WALSH BRADLEY and HAGEDORN, JJ., joined. KAROFSKY, J., filed a concurring opinion. ROGGENSACK, J., filed a dissenting opinion in which ZIEGLER, C.J., and REBECCA GRASSL BRADLEY, J., joined.

NOT PARTICIPATING:

ATTORNEYS:

For the defendants-respondents-petitioners, there were briefs filed by *William W. Ehrke, Micaela Haggenjos*, and *Crivello Carlson S.C.*, Milwaukee. There was an oral argument by *William W. Ehrke*.


For the plaintiff-appellant, there was a brief filed by *Briane F. Pagel* and *Lawton & Cates, S.C.*, Madison. There was an oral argument by *Briane F. Pagel*.

An amicus curiae brief was filed on behalf of Wisconsin Bankers Association by *James E. Bartzen* and *Boardman & Clark LLP*, Madison.

An amicus curiae brief was filed on behalf of The Wisconsin Credit Union League and American Financial Services Association by *Lisa M. Lawless* and *Husch Blackwell LLP*, Milwaukee; and *Marci V. Kawski*, *Lauren C. Capitini* and *Husch Blackwell LLP*, Madison.

**2022 WI 1**

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2019AP1365
(L.C. No. 2017cv1704)

STATE OF WISCONSIN : IN SUPREME COURT

Danelle Duncan,

     Plaintiff-Appellant,

     v.

Asset Recovery Specialists, Inc., Greg Strandlie and Wells Fargo Bank, N.A.,

     Defendants-Respondents-Petitioners.

**FILED**

**JAN 6, 2022**

Sheila T. Reiff
Clerk of Supreme Court

---

DALLET, J., delivered the majority opinion of the Court with respect to all parts except ¶¶29, 31-34, in which ANN WALSH BRADLEY, HAGEDORN, and KAROFSKY, JJ., joined, and an opinion with respect to ¶¶29, 31-34, in which ANN WALSH BRADLEY and HAGEDORN, JJ., joined. KAROFSKY, J., filed a concurring opinion. ROGGENSACK, J., filed a dissenting opinion in which ZIEGLER, C.J., and REBECCA GRASSL BRADLEY, J., joined.

---

REVIEW of a decision of the Court of Appeals. *Modified and affirmed and, as modified, cause remanded.*

¶1 REBECCA FRANK DALLET, J. Danelle Duncan left her car in her parking spot in the garage on the ground floor of her apartment building. When she returned a short time later, the car was gone. She later learned that Defendants—Asset Recovery Specialists, Inc.; Wells Fargo Bank, N.A.; and Greg Strandlie—

had entered the garage without her consent and repossessed the car.

¶2   Duncan alleges that Defendants violated the Wisconsin Consumer Act by "[e]ntering a dwelling used by the customer as a residence except at the voluntary request of a customer" during the repossession.  See Wis. Stat. § 425.206(2)(b) (2017-18).[1]  We agree and hold that "dwelling used by the customer as a residence" in § 425.206(2)(b) includes a garage attached to the residential building in which the customer lives.  In her complaint, Duncan also alleged that Defendants' conduct during and after the repossession was unconscionable in violation of Wis. Stat. § 425.107.  We hold that claims of unconscionability under § 425.107 are available only in "actions or other proceedings brought by a creditor to enforce rights arising from consumer credit transactions," see Wis. Stat. § 425.102, and that a non-judicial repossession under § 425.206(1)(d), like the one Defendants performed in this case, is not such an action or other proceeding.  As a result, Duncan's unconscionability claim must be dismissed.  We therefore affirm the decision of the court of appeals, as modified by our conclusion on unconscionability, and remand to the circuit court for further proceedings.

---

[1] All subsequent references to the Wisconsin Statutes are to the 2017-18 version unless otherwise indicated.

I

¶3 Duncan bought her car from a dealership and financed the purchase with a loan. The loan, which created a security interest in the car, was later assigned to Wells Fargo Bank. After Duncan defaulted on the loan, the Wisconsin Consumer Act (Wis. Stat. chs. 421-427) provided the bank with two ways to take possession of the car. It could either obtain a judgment for return of the car by filing a replevin action under Wis. Stat. § 425.205 or follow the statutory process for a non-judicial repossession under Wis. Stat. §§ 425.205(1g)(a) and 425.206(1)(d). Wells Fargo pursued the latter option,[2] and hired Asset Recovery Specialists, owned by Greg Strandlie, to repossess Duncan's car.

¶4 At that time, Duncan lived in a multi-story, multi-unit apartment building. The ground floor of the building is made up entirely of parking for residents and includes at least 56 parking spaces. Duncan leased a parking space in the garage under an agreement separate from her apartment lease. To access the residential floors and apartments from the garage, or to

---

[2] It is undisputed that Wells Fargo met the statutory requirements to proceed with a non-judicial repossession under Wis. Stat. § 425.206(1)(d). Specifically, Wells Fargo provided notice to Duncan, pursuant to Wis. Stat. § 425.205(1g)(a), including notice of Duncan's right to demand that Wells Fargo proceed by filing a replevin action. See § 425.205(1g)(a)3. Had Duncan made such a demand, § 425.206(1)(d) would have barred Wells Fargo from repossessing the car without first obtaining judgment in a replevin action brought under § 425.205. The parties agree that Duncan made no such demand, and therefore no replevin action was required.

enter the garage on foot from the outside, residents must use keys. To drive into the garage, residents must use a garage door opener.[3]

¶5 When Strandlie and one of his employees arrived to repossess Duncan's car, however, they found the garage door open. They went in, located Duncan's car, and towed it away. Neither Strandlie nor the employee interacted with Duncan at the time. A maintenance worker was in the garage at the time of the repossession and did not object.

¶6 Duncan filed this case in circuit court[4] alleging, among other things, that Defendants violated Wis. Stat. § 425.206(2)(b) when they entered the parking garage to repossess her car and that Defendants' conduct during and after the repossession was unconscionable in violation of Wis. Stat. § 425.107(1).[5]

---

[3] As the court of appeals noted, the parties dispute other facts about the garage, including whether signs were posted restricting entry. See Duncan v. Asset Recovery Specialists, Inc., 2020 WI App 54, ¶5 n.3, 393 Wis. 2d 814, 948 N.W.2d 419. Like the court of appeals, we conclude that these factual disputes are immaterial to our interpretation and application of Wis. Stat. § 425.206(2)(b). See id.

[4] The Honorable Stephen E. Ehlke of the Dane County Circuit Court presided.

[5] Duncan initially brought these claims in an action in federal court alongside other claims under state and federal law. See Duncan v. Asset Recovery Specialists, Inc., No. 16-cv-530-WMC, 2017 WL 2870520 (W.D. Wis. July 5, 2017), aff'd 907 F.3d 1016 (7th Cir. 2018). The federal court dismissed the claims at issue in this case without prejudice. See id. at *6-7.

¶7 The circuit court granted summary judgment to Defendants on all claims, concluding that entering the garage to repossess the car did not violate Wis. Stat. § 425.206(2)(b) and that Duncan's unconscionability claim failed as a result. The circuit court reasoned that § 425.206(2)(b) did not apply because Duncan had no right to exclude all others from the garage and that the garage "offers no use that is primarily or intimately tied to the use of her apartment, for example, sleeping, eating or conducting her private life."

¶8 The court of appeals reversed. Duncan v. Asset Recovery Specialists, Inc., 2020 WI App 54, 393 Wis. 2d 814, 948 N.W.2d 419. The court of appeals reasoned that "dwelling used by [Duncan] as a residence" included the parking garage, relying on the language of Wis. Stat. § 425.206(2)(b); another part of the Wisconsin Consumer Act, Wis. Stat. § 422.419(1)(a); and an administrative rule interpreting § 422.419(1)(a), Wis. Admin. Code § DFI-WCA 1.392 (July 2007)[6]. See Duncan, 393 Wis. 2d 814, ¶2. Based on its reading of those provisions, the court of appeals also rejected any interpretation of the phrase "dwelling used by the customer as a residence" that "turns on considerations of ownership or the right to exclude" or the would-be repossessors' subjective evaluation of whether a particular location showed some "indicia of residential use." Id., ¶¶33-35 (internal quotation marks omitted). Because the

---

[6] All subsequent references to the Wis. Admin. Code ch. DFI-WCA 1 are to the July 2007 register date unless otherwise indicated.

5

circuit court dismissed the unconscionability claim on the same grounds as the repossession claim, the court of appeals remanded to give the parties and the circuit court the opportunity to address in the first instance whether the unconscionability claim should be dismissed for other reasons.

II

¶9 At issue in this case is the interpretation and application of Wis. Stat. §§ 425.206(2)(b) and 425.107(1). Statutory interpretation is a question of law that we review de novo. See, e.g., Clean Wis., Inc. v. DNR, 2021 WI 72, ¶10, 398 Wis. 2d 433, 961 N.W.2d 611. "When interpreting statutes, we start with the text, and if its meaning is plain on its face, we stop there." Id. We also consider the broader statutory context, interpreting language consistently with how it is used in closely related statutes. Id. Our analysis is further informed by the legislature's explicit statements of legislative purpose and those reflected in a statute's context and structure. See State ex rel. Kalal v. Cir. Ct. for Dane Cnty., 2004 WI 58, ¶49, 271 Wis. 2d 633, 681 N.W.2d 110.

III

¶10 We begin with Duncan's claim that Defendants violated Wis. Stat. § 425.206(2)(b) by entering the parking garage of her apartment building to repossess her car. Section 425.206(2) states as follows:

> In taking possession of collateral or leased goods, no merchant may do any of the following:
>
> (a) Commit a breach of the peace.

6

    (b)  Enter  a  dwelling  used  by  the  customer  as  a
         residence  except  at  the  voluntary  request  of  a
         customer.

It is undisputed that Defendants are "merchant[s]," that Duncan is "the customer," and that Duncan made no "voluntary request" for Defendants to enter the garage.  See id.; Wis. Stat. § 421.301(17), (25).  To determine whether the repossession was proper, we must therefore answer a single question:  Did Defendants enter "a dwelling used by [Duncan] as a residence" when they repossessed her car from the first-floor parking garage of her apartment building?  In answering that question, we first determine the meaning of "dwelling" as it is used in § 425.206(2)(b) before analyzing the phrase that modifies it, "used by the customer as a residence."

A

¶11 Although "dwelling" is undefined in the Wisconsin Consumer Act, it is a common word and the parties generally agree on its ordinary, dictionary definition.  "Dwelling" typically refers to "a building or other shelter in which people live."  See, e.g., Webster's Seventh New Collegiate Dictionary 259 (16th ed. 1967); American Heritage Dictionary 406 (6th ed. 1976) (defining "dwelling" as "[a] place to live in; residence;

7

abode").[7]  In other words, a dwelling is a building in which at least one person lives.

¶12 That definition is consistent with the use of "dwelling" elsewhere in the statutes at the time the Wisconsin Consumer Act was adopted in 1971.  See Spielmann v. Indus. Comm'n, 236 Wis. 240, 250, 295 N.W. 1 (1940) (explaining that statutory terms should be interpreted consistently with the "definition contained in the statutes in force at the time the act was passed").  For example, Wis. Stat. § 990.01(13)(a) (1971-72) defined "homestead" to mean "the dwelling and so much of the land surrounding it as is reasonably necessary for use of the dwelling as a home, but not less than one-fourth acre (if available) and not exceeding 40 acres."  Id.  Similarly, Wis. Stat. § 852.09(2) (1971-72) defined "home" as "any dwelling in the estate of the decedent which at the time of his death the

---

[7] Black's Law Dictionary contains similar definitions.  At the time the Wisconsin Consumer Act was adopted, Black's defined "dwelling house" as "[t]he house in which a man lives with his family; a residence; abode; habitation; the apartment or building or group of buildings, occupied by a family as a place of residence."  Dwelling House, Black's Law Dictionary 596 (4th rev. ed. 1968).  The subsequent edition of Black's included a very similar definition of "dwelling," which is nearly identical to the current edition's definition: "The house or other structure in which a person or persons live; a residence; abode; habitation; the apartment or building, or group of buildings, occupied by a family as a place of residence.  Structure used as place of habitation."  Dwelling, Black's Law Dictionary 454 (5th ed. 1979); see also Dwelling House, Black's Law Dictionary 641 (11th ed. 2019).  These definitions accord with the ordinary dictionary definition of "dwelling" and reinforce our ultimate conclusion that "dwelling" in Wis. Stat. § 425.206(2)(b) refers to a building in which at least one person lives.

surviving spouse occupies or intends to occupy." Id. Section 852.09(2) further explained that this language included "a house, a mobile home, a duplex or multiple apartment building one unit of which is occupied by the surviving spouse, or a building used in part for a dwelling and in part for commercial or business purposes." Id. Thus, at the time the Wisconsin Consumer Act was adopted, "dwelling" meant, at a minimum, a building in which at least one person lived. The term referred to the entire building, not just the parts of the building in which the residents might eat, sleep, or shower.

¶13 Aside from Wis. Stat. § 425.206(2)(b), the Wisconsin Consumer Act uses "dwelling" twice, both times in ways consistent with the ordinary understanding of the word and its usage elsewhere in the statutes. See Clean Wis., 398 Wis. 2d 433, ¶10 (noting that we interpret statutory language "consistent with how it is used in closely related statutes"). "Dwelling" appears first in Wis. Stat. § 422.409(2), which imposes requirements on certain payment-assignment notices. See id. (requiring that such notices include the total of payments "except in the case of a transaction secured by a first lien mortgage or equivalent security interest for the purpose of the acquisition of a dwelling"). It is clear from the language of § 422.409(2)——particularly its reference to a "mortgage or equivalent security interest"——that "dwelling" refers to a building in which at least one person lives and not just certain rooms within a building.

9

¶14 The second time "dwelling" appears in the Act is in Wis. Stat. § 422.419(1)(a), which prohibits consumer credit contracts from allowing "[t]he merchant or other person acting on the merchant's behalf . . . to enter the customer's dwelling or to commit any breach of the peace in the course of taking possession of collateral securing the transaction." This statute is the subject of an administrative rule adopted shortly after the Act took effect. See 210 Wis. Admin. Reg. 72 (June 1, 1973); see also Wis. Stat. § 426.104(1)(e) (authorizing the Department of Financial Institutions' administrator to "adopt . . . rules to carry out the policies of chs. 421 to 427 and 429"). That rule, Wis. Admin. Code § DFI-WCA 1.392, specifies that, for purposes of § 422.419(1)(a), "dwelling" includes "any garage, shed, barn or other building on the premises whether attached or unattached."

¶15 In light of the relationship between Wis. Stat. §§ 425.206(2) and 422.419(1)(a), the Department's rule reinforces our reading of "dwelling" in § 425.206(2)(b). As discussed above, § 425.206(2) prohibits merchants from breaching the peace or entering a dwelling used by the customer as a residence during a repossession. And § 422.419(1)(a) prohibits merchants from contracting around that prohibition. As the court of appeals put it in this case, these statutes "appear to be two sides of the same coin." Duncan, 393 Wis. 2d 814, ¶28. Because "dwelling" in § 422.419(1)(a) includes any garage on the premises, see Wis. Admin. Code § DFI-WCA 1.392, Defendants could not have contracted for the right to repossess Duncan's car from

10

her apartment building's parking garage.  We see no reason why "dwelling" in § 425.206(2)(b) should exclude that same garage, especially since both statutes prevent merchants from entering a dwelling to repossess property.

¶16 To be clear, we do not adopt the administrative definition of "dwelling" as the statutory definition under Wis. Stat. § 425.206(2)(b).  Rather, we rely on the administrative definition only as further support for our conclusion that "dwelling" in § 425.206(2)(b) means, at a minimum, a building in which at least one person lives.  Based on that definition, Duncan's "dwelling" includes the parking garage, because it is located in the building in which she lives.  The remaining question then is whether the phrase "used by the customer as a residence" nevertheless excludes the garage.

B

¶17 Despite the parties' general agreement on the common meaning of "dwelling," they offer competing readings of the phrase "used by the customer as a residence."  Defendants assert that a "residence" is the place where a person "actually lives." They conclude that "used by the customer as a residence" limits "dwelling" to only the parts of the building that are also "integral parts" of a residence; for example, the areas in which a person might sleep, eat, cook, or shower.  Because Duncan did not sleep, eat, cook, or shower in the garage, Defendants claim that they could lawfully enter the garage because it was not used by Duncan as a residence.  In contrast, Duncan suggests that "used by the customer as a residence" simply distinguishes

11

her particular dwelling from all other dwellings. She therefore acknowledges that Defendants would not have violated Wis. Stat. § 425.206(2)(b) if they had repossessed her car from the parking garage of a different apartment building, or while it was parked in a friend's open garage.

¶18 We agree with Duncan's interpretation and conclude that "used by the customer as a residence" distinguishes the customer's dwelling from all other dwellings. To begin with, this is the more natural reading of the language of Wis. Stat. § 425.206(2)(b). As we have already explained, "dwelling" generally refers to an entire building in which people live. The modifier "used by the customer as a residence" is best understood as imposing a limitation on which dwelling § 425.206(2)(b) protects——the dwelling this customer uses as a residence——not what parts of the dwelling it protects. Nothing in the language "dwelling used by the customer as a residence" suggests that the protections in § 425.206(2)(b) are limited to only the "integral parts" of a residence or the areas with "indicia of residential use." Indeed, the best evidence against those interpretations is that neither phrase appears in the statute.

¶19 Additionally, reading "used by the customer as a residence" as distinguishing the customer's dwelling from all other dwellings provides simple, clear guidance to parties to consumer credit transactions. This interpretation makes clear to merchants that "dwelling used by the customer as a residence" refers to the customer's entire dwelling, the full structure in

12

which she lives. In this respect, our interpretation of Wis. Stat. § 425.206(2)(b) furthers one of the legislatively expressed purposes of the Wisconsin Consumer Act,[8] namely "simplify[ing], clarify[ing], and moderniz[ing] the law governing consumer transactions." See Wis. Stat. § 421.102(2)(a); see also § 421.102(1) (directing courts to "liberally construe[] and appl[y]" the Wisconsin Consumer Act in furtherance of its expressed purposes and policies); Kalal, 271 Wis. 2d 633, ¶49 (explaining that when the legislature states the purposes of a statute, we interpret the statute in light of those purposes).

¶20 In contrast, Defendants' reading of "used by the customer as a residence" is unworkable. See Kalal, 271 Wis. 2d 633, ¶46 (explaining that we should read statutes to avoid "unreasonable results"). Defendants' proposed interpretation of Wis. Stat. § 425.206(2)(b) requires merchants to perform a case-by-case analysis of how the customer uses certain parts of her dwelling to decide whether a repossession is permitted. But Defendants offer no principled way to decide when "indicia of residential use" or "residential activities"

---

[8] There are four legislatively expressed purposes of the Wisconsin Consumer Act: (1) "[t]o simplify, clarify, and modernize the law governing consumer transactions"; (2) "[t]o protect consumers against unfair, deceptive, false, misleading and unconscionable practices by merchants"; (3) "[t]o permit and encourage the development of fair and economically sound consumer practices in consumer transactions"; and (4) "[t]o coordinate the regulation of consumer credit transactions with the policies of the federal consumer credit protection act." Wis. Stat. § 421.102(2)(a)-(d).

are prevalent or frequent enough such that a particular part of a dwelling is "used by the customer as a residence." Even more to the point, Defendants fail to explain how a would-be repossessor would know, without entering the building first, whether a customer sometimes sleeps, eats, cooks, or showers in a particular part of her dwelling.

¶21 Like the court of appeals, we also reject any definition of "dwelling used by the customer as a residence" that depends on whether the customer has the right to exclude others from a particular area or whether the customer has a reasonable expectation of privacy in a particular area under the Fourth Amendment.[9] For one thing, there is no basis in the text of Wis. Stat. § 425.206(2)(b) for either notion. The statute's protections apply to a building——the "dwelling"——that the customer uses in a particular way——"as a residence." Its protections turn on neither who owns the building nor what level of privacy a resident might reasonably expect. Additionally, the Wisconsin Consumer Act reflects a balance the legislature struck between customers' and merchants' interests in certain transactions. That courts have struck a different balance between citizens and law enforcement in the Fourth Amendment context says nothing about how we should interpret § 425.206(2)(b).

---

[9] See, e.g., State v. Dumstrey, 2016 WI 3, ¶51, 366 Wis. 2d 64, 873 N.W.2d 502 (concluding that a parking garage under the defendant's apartment building was not curtilage and that the defendant lacked a reasonable expectation of privacy there).

14

¶22 Similarly, it is irrelevant whether Defendants breached the peace by entering Duncan's garage. The text and structure of Wis. Stat. § 425.206(2)(b) make clear that "[e]nter[ing] a dwelling used by the customer as a residence" is not synonymous with breaching the peace. Section 425.206(2)(a) codifies the rule in the Uniform Commercial Code prohibiting repossessions in breach of the peace. See Wis. Stat. § 409.609(2)(b); see also Hollibush v. Ford Motor Credit Co., 179 Wis. 2d 799, 806, 508 N.W.2d 449 (Ct. App. 1993) (concluding that "breach of the peace" in § 425.206(2)(a) has the same meaning as in the Uniform Commercial Code). And § 425.206(2)(b) separately prohibits merchants from repossessing collateral by either breaching the peace or "enter[ing] a dwelling used by the customer as a residence," a distinction that would make little sense if both prohibitions meant the same thing. See Augsburger v. Homestead Mut. Ins. Co., 2014 WI 133, ¶17, 359 Wis. 2d 385, 856 N.W.2d 874.

¶23 In sum, we conclude that "dwelling used by the customer as a residence" in Wis. Stat. § 425.206(2)(b) includes a garage attached to the residential building in which the customer lives. Defendants therefore violated § 425.206(2)(b) when they repossessed Duncan's car from the parking garage of her apartment building without her consent.

IV

¶24 We turn next to Duncan's claim of unconscionability pursuant to Wis. Stat. § 425.107(1). We begin with the language of the statute:

> With respect to a consumer credit transaction, if the court as a matter of law finds that any aspect of the transaction, any conduct directed against the customer by a party to the transaction, or any result of the transaction is unconscionable, the court shall, in addition to the remedy and penalty authorized in sub. (5), either refuse to enforce the transaction against the customer, or so limit the application of any unconscionable aspect or conduct to avoid any unconscionable result.

§ 425.107(1). The statute enumerates a number of different factors the court may consider pertinent to determining whether a transaction, conduct directed against the customer, or the result of the transaction are unconscionable. See § 425.107(3)(a)-(i). In addition to the remedies specified in subsec. (1), upon a finding of unconscionability a customer may recover statutory and actual damages pursuant to Wis. Stat. § 425.303. See § 425.107(5).

¶25 The general rule in the Wisconsin Consumer Act is that "[a]ny right or obligation declared" in the Act "is enforceable by action unless the provision declaring it specifies a different and limited effect." Wis. Stat. § 425.301(2). But Wis. Stat. § 425.102 states that the provisions of that subchapter, including the unconscionability provision in Wis. Stat. § 425.107, "appl[y] to actions or other proceedings brought by a creditor to enforce rights arising from consumer credit transactions and to extortionate extensions of credit under s. 425.108."[10] We are therefore left with two

---

[10] Duncan does not allege a violation of Wis. Stat. § 425.108, which prohibits extortionate extensions of credit. As a result, we do not address the implications of Wis. Stat. § 425.102 on the available remedies for violations of § 425.108.

16

questions: (1) can customers bring claims of unconscionability under § 425.107 only in "actions or other proceedings brought by a creditor to enforce rights arising from consumer credit transactions"?; and (2) is a non-judicial repossession pursuant to Wis. Stat. § 425.206(1)(d) such an action or other proceeding?

A

¶26 Although we have not previously addressed the first question, several federal district courts have, and all have concluded that a consumer may raise an unconscionability claim under Wis. Stat. § 425.107 only in response to an action or other proceeding brought by a creditor. In Riel v. Navient Sols., Inc., No. 16-CV-1191-JPS, 2017 WL 168900 (E.D. Wis. Jan. 17, 2017), the court concluded that the scope statement in Wis. Stat. § 425.102 meant that consumers could not enforce "[s]ection 425.107's prohibitions on unconscionability via a separate civil lawsuit." Id. at *3 (citing Tammi v. Porsche Cars N.A., Inc., 2009 WI 83, ¶27, 320 Wis. 2d 45, 768 N.W.2d 783). The court held that, because § 425.107(1) applied only to actions or other proceedings brought by a creditor, the statute implied "that [customers] must raise unconscionability in the form of an affirmative defense to [a creditor's] lawsuit to collect the loans, if one is filed." Id. Other federal district courts have followed Riel's reasoning. See, e.g., Gable v. Universal Acceptance Corp., 338 F. Supp. 3d 943, 956-57 (E.D. Wis. 2018); VanHuss v. Rausch, Sturm, Israel, Enerson &

17

Hornik, No. 16-cv-372-slc, 2017 WL 1379402, at *10 (W.D. Wis. Apr. 14, 2017).

¶27 We agree with the federal courts that the scope language of Wis. Stat. § 425.102 bars a customer from bringing a claim of unconscionability under Wis. Stat. § 425.107 except in response to "actions or other proceedings brought by a creditor." Although the protections of the Wisconsin Consumer Act are generally enforceable in actions brought by consumers, § 425.102 makes statutory unconscionability claims available in a more limited set of circumstances. These limitations are in line with the common law doctrine of unconscionability, which is a defense to contract enforcement, not an affirmative claim available outside a contract-enforcement or breach-of-contract action. See Rosecky v. Schissel, 2013 WI 66, ¶57, 349 Wis. 2d 84, 833 N.W.2d 634.

¶28 We therefore hold that a consumer may assert a claim of unconscionability under Wis. Stat. § 425.107 only in response to "actions or other proceedings brought by a creditor to enforce rights arising from consumer credit transactions." See Wis. Stat. § 425.102.

B

¶29 On the second question, we conclude that a non-judicial repossession pursuant to Wis. Stat. § 425.206(1)(d) is not one of the "actions or other proceedings brought by a creditor" contemplated by Wis. Stat. § 425.102.[11] Although

_____

[11] There are multiple ways a creditor can obtain the right to non-judicially repossess a vehicle. The creditor may, as in

18

neither "actions" nor "other proceedings" is defined in the Wisconsin Consumer Act, the context of the Act reveals that these terms refer to creditor-initiated litigation or other legal processes akin to litigation pursued by a creditor.

¶30 Taking the word "actions" first, this term is consistently used throughout the Wisconsin Consumer Act to refer to litigation. For example, Wis. Stat. § 425.205, titled "Action to recover collateral," explains that "a creditor seeking to obtain possession of collateral or goods subject to a consumer lease shall commence an <u>action</u> for replevin of the collateral or leased goods." § 425.205(1) (emphasis added). The statute goes on to describe the process a creditor must follow in filing a replevin action, and it specifies the form and contents of the summons and complaint "in such actions." <u>See</u> § 425.205(1)-(3). Several other statutes similarly use

_____

this case, follow the notice process laid out in Wis. Stat. §§ 425.205(1g) and 425.206(1)(d); or a creditor may, after obtaining a judgment in a replevin action, non-judicially repossess the vehicle. <u>See</u> § 425.205(5)(b). In the latter case, "non-judicial" is something of a misnomer, since that remedy is available only after a creditor files and prevails in a replevin case. Section 425.205(5)(b) nevertheless refers to this as a "nonjudicial recovery" of collateral distinct from the creditor's right after obtaining judgment in a replevin action to "[h]ave execution issue to require the sheriff of the county where the collateral or leased goods may be to take the same from the defendant and deliver it to the plaintiff." § 425.205(5)(a).

Our holding that "actions or other proceedings" does not encompass non-judicial repossessions is limited to non-judicial repossessions pursuant to § 425.206(1)(d), since a non-judicial repossession pursuant to § 425.205(5)(b) is possible only after a creditor prevails in an "action[] or other proceeding[]"——that is, a replevin action. <u>See</u> § 425.205(1).

19

"action" to refer to a lawsuit or other judicial proceeding. See, e.g., Wis. Stat. § 425.111(1) ("Prior to entry of judgment in an action subject to this subchapter, no process, . . . shall issue" except under certain circumstances (emphases added)); Wis. Stat. § 425.203(1) (explaining that, after certain conditions are met, "a merchant may commence an action to recover collateral . . . or reduce the claim to a judgment by any available judicial procedure" (emphases added)).   Unlike these actions, non-judicial repossession under Wis. Stat. § 425.206(1)(d) is an explicit alternative to litigation that does not require a creditor to assert its rights in court. Non-judicial repossession is available to a creditor under § 425.206(1)(d) only if the customer fails to demand that the creditor file a replevin action.   See § 425.206(1)(b), (d). As a result, a non-judicial repossession under § 425.206(1)(d) is not an "action[]" described in § 425.102.

¶31  As for "other proceedings," we know from the phrase "actions or other proceedings," that it, too, refers to something like litigation.   Wis. Stat. § 425.102.   After all, "actions or other proceedings" implies that "actions" (i.e. litigation) are one type of "proceedings."   Id. (emphasis added); see Stroede v. Soc'y Ins., 2021 WI 43, ¶¶13, 15, 397 Wis. 2d 17, 959 N.W.2d 305 (explaining that in the list "owner, lessee, tenant, or other lawful occupant," an "other lawful occupant" covered only those persons who had the same type of control over property as did owners, lessees, and tenants). Other sections in ch. 425 provide further contextual support for

20

that conclusion.  For example, Wis. Stat. § 425.110(1) prevents employers from firing an employee because "a merchant has subjected or attempted to subject unpaid earnings of the employee to garnishment <u>or like proceeding directed to the employer</u> for the purpose of paying a judgment arising from a consumer credit transaction."  <u>Id.</u> (emphasis added).  The earnings-garnishment statutes use the terms "action" and "proceeding" synonymously, and set forth a process different in some respects from ordinary civil litigation.  <u>See, e.g.</u>, Wis. Stat. § 812.31(3) (referring to an "earnings garnishment action"); § 812.31(4) (describing the form of pleadings in "an earnings garnishment proceeding"); <u>see also</u> Wis. Stat. § 812.35 (laying out the process for "commenc[ing] an earnings garnishment proceeding").  Similarly, Wis. Stat. § 425.203(3)(b) refers to "a proceeding for a deficiency judgment pursuant to s. 425.209(1)," which occurs in court following repossessions performed pursuant to a replevin judgment.  <u>See also</u> § 425.203(3)(a).  In other words, "other proceedings" are formal legal processes similar to litigation that allow a creditor to enforce its rights.[12]

---

[12] At the time the Wisconsin Consumer Act was adopted, <u>Black's Law Dictionary</u> used the term "proceeding" almost identically with "action."  Proceeding, <u>Black's Law Dictionary</u> 1368 (4th rev. ed. 1968) ("In a general sense, the form and manner of conducting juridical business before a court or judicial officer; regular and orderly progress in form of law; including all possible steps in an action from its commencement to the execution of judgment.").  A subsequent edition included a slightly different definition, but not one that suggests that non-judicial repossession is an action or proceeding.  "Proceeding" included "action and special proceedings before

21

¶32 Other scope provisions in the Wisconsin Consumer Act demonstrate that "actions or other proceedings" refers to a narrow subset of things a creditor might do to enforce its rights.  For example, Wis. Stat. § 427.102 demonstrates that when the legislature wants a statute's scope to encompass the full range of steps a creditor might take in recovering debts, it knows how to write a sufficiently broad statement: "This chapter applies to conduct and practices in connection with the collection of obligations arising from consumer transactions." Id. (emphasis added).  Slightly narrower is Wis. Stat. § 425.201, which provides that subchapter II of Chapter 425 "applies to the enforcement by a creditor of security interests in collateral."  The general "enforcement . . . of security interests" is broad enough to encompass non-judicial repossessions, because that is a means by which a creditor may enforce a security interest in collateral.  But "actions or other proceedings" is narrower than "conduct and practices" and "enforcement . . . of security interests."  "Actions or other proceedings" includes only a limited subset of ways a creditor might enforce its rights, namely through litigation or similar formal legal processes.

---

judicial tribunals as well as proceedings pending before quasi-judicial officers and boards," and "any action, hearing, investigation, inquest, or inquiry (whether conducted by a court, administrative agency, hearing officer, arbitrator, legislative body, or any other person authorized by law) in which, pursuant to law, testimony can be compelled to be given." Proceeding, Black's Law Dictionary 1083-84 (5th ed. 1979).

¶33 Non-judicial repossessions under Wis. Stat. § 425.206(1)(d), however, are unlike litigation. For one thing, the non-judicial repossession process is highly informal. Indeed, all a merchant has to do prior to non-judicially repossessing a car is send the customer a notice containing the disclosures required by Wis. Stat. § 425.205(1g)(a). If the customer does nothing for 15 days, then the merchant may repossess the car, no additional process or procedures required. See § 425.206(1)(d). For another thing, non-judicial repossessions under § 425.206(1)(d) are non-adversarial, and require no third-party involvement at all, let alone that of a neutral third party like a judge. Indeed, aside from curing the default under Wis. Stat. § 425.105, a customer's only way of contesting a non-judicial repossession is by demanding the merchant instead file a replevin action in the circuit court. §§ 425.205(1g)(a)3.; 425.206(1)(d). In other words, non-judicial repossession is permitted only after the customer fails to demand the creditor file an "action[] or other proceeding[]." See §§ 425.206(1)(d); 425.102.

¶34 We therefore conclude that non-judicial repossessions under Wis. Stat. § 425.206(1)(d) are not "actions or other proceedings brought by a creditor." As a result, a claim of unconscionability under Wis. Stat. § 425.107(1) is unavailable in this case. See Wis. Stat. § 425.102.

V

¶35 We conclude that "dwelling used by the customer as a residence" in Wis. Stat. § 425.206(2)(b) includes a garage

23

attached to the residential building in which the customer lives.   Defendants therefore violated § 425.206(2)(b) when they repossessed Duncan's car from the parking garage in her apartment building.   We also conclude that Duncan's unconscionability claim under Wis. Stat. § 425.107 fails because such claims are available only in response to "actions or other proceedings brought by a creditor," Wis. Stat. § 425.102, and Defendants' non-judicial repossession of Duncan's car under Wis. Stat. § 425.206(1)(d) was not an action or other proceeding. Accordingly, we affirm the court of appeals' decision as modified by our conclusion on unconscionability and remand to the circuit court for further proceedings.

*By the Court.*—The decision of the court of appeals is modified and affirmed and, as modified, the cause remanded to the                                    circuit                                    court.

¶36 JILL J. KAROFSKY, J. *(concurring).* I agree that Defendants violated Wis. Stat. § 425.206(2)(b) by entering Duncan's "dwelling" and concur in the court's ultimate mandate. I disagree, however, with the conclusion that a customer can never raise unconscionability as a defense to a non-judicial repossession. Because the applicable statutes plainly permit an unconscionability defense, I respectfully concur.

I

¶37 A creditor may repossess a motor vehicle that serves as collateral through either a judicial or a non-judicial process. Judicial repossession follows a creditor's successful replevin action. See Wis. Stat. §§ 425.205 & 425.206(1)(b). Non-judicial repossession requires no court order, but the creditor must still adhere to the legally prescribed process under § 425.206(1)(d)-(2). That non-judicial process includes:

- Providing the customer detailed notice per § 425.205(1g);
- Taking no action for at least 15 days after that notice is given, § 425.206(1)(d);
- Committing no "breach of the peace" when repossessing the car, § 425.206(2)(a); and
- Abstaining from entering "a dwelling used by the customer as a residence" absent the customer's voluntary request, § 425.206(2)(b).

Failure to follow these steps exposes the creditor to legal sanctions. See § 425.206(3).

¶38 Here, in response to the non-judicial repossession of her car, Duncan alleges that Defendants acted unconscionably

1

both during and after the repossession, contrary to Wis. Stat. § 425.107. The question is, may she raise this unconscionability defense? To answer that question, I first look to the plain meaning of the statutes governing unconscionability. I then explain why we should give the operative statutory text at issue its common, ordinary, and accepted meaning. I conclude by applying that meaning to Duncan's circumstances and determine that she and customers like her may raise an unconscionability defense, regardless of which repossession alternative a creditor brings.

A

¶39 The unconscionability defense codified in Wis. Stat. § 425.107 entitles a customer to additional relief "if the court as a matter of law finds that any aspect of the transaction, any conduct directed against the customer by a party to the transaction, or any result of the transaction is unconscionable." § 425.107(1). I agree with my colleagues that this defense is subject to the scope provision at Wis. Stat. § 425.102, and as such is only available in response "to actions or other proceedings brought by a creditor to enforce rights arising from consumer credit transactions" (emphasis added). I further agree that a non-judicial repossession is not an "action." We diverge, however, on whether a non-judicial repossession constitutes a "proceeding."

¶40 "Proceeding" is neither specially defined nor technical and therefore carries its "common, ordinary, and accepted meaning." See, e.g., Stroede v. Soc'y Ins., 2021

2

WI 43, ¶11, 397 Wis. 2d 17, 959 N.W.2d 305; see also Wis. Stat. § 990.01(1). To discern that common, ordinary, and accepted meaning the court often looks to dictionaries as well as the word's usage in common parlance. See, e.g., Stroede, 397 Wis. 2d 17, ¶12; Topolski v. Topolski, 2011 WI 59, ¶42, 335 Wis. 2d 327, 802 N.W.2d 482; State ex rel. McManus v. Bd. of Trs. of Policemen's Pension Fund, 138 Wis. 133, 136, 119 N.W. 806 (1909) (adopting a word's broader "ordinary modern usage" as used in "common parlance" over a dated common-law meaning). Here, dictionary and judicial definitions of "proceeding," as well as its usage in common parlance, all confirm that "proceeding" means any legally prescribed process for enforcing a legal right.

¶41 The Oxford English Dictionary's leading "Law" definition for "proceeding" broadly includes "[a] legal action or process." Proceeding, Oxford English Dictionary (3d ed. 2007) (emphasis added). That breadth is mirrored in another dictionary's "proceeding" definition: "A course of action; a procedure." Proceeding, American Heritage Dictionary 1444 (3d ed. 1992). These broad dictionary definitions match comprehensive judicial definitions of "proceeding." Several courts have recited the Words and Phrases definition that "proceeding" is "a very comprehensive term" generally meaning "a prescribed course of action for enforcing a legal right." See, e.g., Wash. Ry. & Elec. Co. v. D.C., 77 F.2d 366, 369 (D.C. Cir. 1935) (quoting Hyattsville Bldg. Ass'n v. Bouic, 44 App. D.C. 408, 413 (D.C. Cir. 1916)); Borough of Jamesburg v. Hubbs, 80

A.2d 100, 102 (N.J. 1951) (quoting Words and Phrases at 83). As the U.S. Court of Appeals for the Eighth Circuit aptly summarized: "'Proceeding' is a comprehensive term meaning the action of proceeding——a particular step or series of steps, adopted for accomplishing something. This is the dictionary definition as well as the meaning of the term in common parlance." Rice v. United States, 356 F.2d 709, 712 (8th Cir. 1966).

¶42 Indeed, in common parlance "proceeding" regularly describes a legally prescribed process for enforcing rights that occurs without any litigation before a judicial or administrative tribunal. For example, under the United States Code the federal government may execute a civil forfeiture of certain contraband via a "nonjudicial civil forfeiture proceeding." 18 U.S.C. § 983 (2018).[1] The United State Supreme Court has dubbed similar non-judicial forfeitures permitted under 19 U.S.C. §§ 1607-09 as "nonjudicial, summary forfeiture proceedings." See United States v. Von Neumann, 474 U.S. 242, 244 n.4 (1986); United States v. Eight Thousand Eight Hundred & Fifty Dollars ($8,850) in U.S. Currency, 461 U.S. 555, 557 n.2 (1983). More recently, the Court referred to Colorado's non-judicial foreclosure procedure as "nonjudicial foreclosure proceedings," as did the Tenth Circuit opinion the Court was

---

[1] Courts interpreting 18 U.S.C. § 983 similarly use the "nonjudicial civil forfeiture proceeding" or "nonjudicial forfeiture proceeding" moniker. See, e.g., Omidi v. United States, 851 F.3d 859 (9th Cir. 2017); Langbord v. U.S. Dep't of Treasury, 832 F.3d 170, 182 (3d Cir. 2016). All references to the United States Code are to the 2018 version.

4

reviewing. See Obduskey v. McCarthy & Holthus LLP, ___ U.S. ___, 139 S. Ct. 1029 (2019), aff'g Obduskey v. Wells Fargo, 879 F.3d 1216 (10th Cir. 2018). State courts speak similarly, such as the California Supreme Court discussing that state's "nonjudicial foreclosure proceedings." Dreyfuss v. Union Bank of Cal., 11 P.3d 383, 385-86, 390 (Cal. 2000). Other examples abound.[2]

¶43 Taken together, the dictionary and judicial definitions of "proceeding" as well as that word's usage in common parlance converge on one, comprehensive common, ordinary, and accepted meaning: a legally prescribed process for enforcing a legal right.

B

¶44 I would simply give "proceeding" its common, ordinary, and accepted meaning here. I see nothing in the statutory context that requires a different result. True, context and a word's relationship "to the language of surrounding or closely-related statutes" can affect a word's otherwise common, ordinary, and accepted meaning. See, e.g., Stroede, 397 Wis. 2d 17, ¶11. It is also true that in the statutes surrounding Wis. Stat. § 425.102, "proceeding" is most often used to connote "something like litigation." But that fact does not in and of

---

[2] See, e.g., United States v. Henderson, 707 F.2d 853 (5th Cir. 1983); Bryan E. Meek, Mortgage Foreclosure Proceedings: Where We Have Been and Where We Need to Go, 48 Akron L. Rev. 129 (2015); Stefan D. Cassella, The Civil Asset Forfeiture Reform Act of 2000, 27 J. Legis. 97 (2001); Jaime Marie Nies, 15A Cyc. of Fed. Proc. § 88:45 (3d ed.).

5

itself override the word's otherwise common, ordinary, and accepted meaning.

¶45 Rather, the legislature instructs that we must apply an undefined, non-technical word's "common and approved usage," except in the limited circumstance where it "would produce a result inconsistent with the manifest intent of the legislature." Wis. Stat. § 990.01(1). Thus, only if "proceeding" as used in related or nearby provisions evinces a real conflict between that word's common, ordinary, and accepted meaning and those provisions' "manifest [legislative] intent" may this court depart from the common, ordinary, and accepted meaning. But nothing in how "proceeding" is used in neighboring provisions causes such a conflict.

¶46 To the contrary, the comprehensive common, ordinary, and accepted meaning of "proceeding" harmonizes that word's varied use across the two neighboring provisions cited by the majority/lead opinion. The first, Wis. Stat. § 425.110(1), discusses "garnishment or like proceedings directed to the employer for the purpose of paying a judgment arising from a consumer credit transaction." Garnishment is a type of legal action, see Wis. Stat. §§ 812.30-812.44, so a "proceeding" like garnishment is something like a legal action. In other words, "proceeding" is used as a synonym for a legal action. That usage fits the common, ordinary, and accepted meaning of "proceeding" because a legal action——such as a garnishment proceeding——is a statutorily prescribed process for enforcing a legal right. See, e.g., id.

6

¶47 A slightly different meaning of "proceeding" appears in Wis. Stat. § 425.203(3)(b). Section 425.203(3)(b) declares that for certain consumer transactions, a judicial hearing to confirm a creditor's sale of repossessed collateral "shall be considered a proceeding for a deficiency judgment." Here, "proceeding" refers to a specific procedure within a larger action rather than the action itself. And, consistent with the common, ordinary, and accepted meaning of "proceeding," this intra-action procedure is also a statutorily prescribed process for enforcing a legal right. See Wis. Stat. §§ 425.209-425.210. The varied meaning of "proceeding" across these two nearby provisions——a synonym of legal action in the former and a particular procedure within an action in the latter——verifies that in this statutory chapter, "proceeding" is used as comprehensively as its common, ordinary, and accepted meaning. See Int'l Wire Works v. Hanover Fire Ins. Co., 230 Wis. 72, 74-75, 283 N.W. 292 (1939) (concluding that different statutes' particular uses of a word that "do not conflict with [its] common meaning . . . indicate[s] that the legislature of this state has adopted th[at] definition").

¶48 Similarly, nothing in other nearby scope provisions calls for a departure from the common, ordinary, and accepted meaning of "proceeding." In contrast to the "actions or other proceedings" phrase at issue here, the nearby "Debt Collection" chapter's scope extends to "conduct and practices." See Wis. Stat. § 427.102. "[C]onduct and practices" might very well encompass a non-judicial repossession. But just because

7

"conduct and practices" could include non-judicial repossessions, does not mean the legislature is forever bound to use that exact language each and every time it intends for a statute to cover such repossessions. That logic unduly hampers the legislature's freedom to use different but overlapping language to accomplish valid policy distinctions. Distinct scopes can harmoniously overlap without any conflict. As such, the legislature's chosen phrasing in a different, apparently overlapping——but non-conflicting——scope provision has no bearing on whether "proceeding" in this scope provision should carry its common, ordinary, and accepted meaning. In sum, I find no evidence of a conflicting "manifest [legislative] intent" in the statutory context that Wis. Stat. § 990.01(1) requires to justify a departure from the common, ordinary, and accepted meaning of "proceeding."

¶49 Beyond lacking contextual support, the "something like litigation" limitation produces two results at odds with the Wisconsin Consumer Act's textually expressed purposes. First, it sets a trap for an unwary customer subjected to a creditor's unconscionable conduct. A savvy customer who within 15 days of the notice makes a written demand that a creditor instead file a replevin action, see Wis. Stat. § 425.206(1)(d), preserves her unconscionability defense. But an unwary customer who misses that tight demand deadline would lose even a meritorious claim against a creditor's unconscionable conduct——giving an unconscionable creditor a free pass. Second, an interpretation narrower than the common, ordinary, and accepted meaning renders

8

the unconscionability defense a nullity in situations where, as alleged here, a creditor's unconscionable conduct first occurs during or after the actual repossession, well beyond the 15-day demand deadline. Even a savvy customer, who simply preferred the efficiency of the non-judicial route, would suddenly be without recourse for a creditor's post-repossession conduct, despite the unconscionability provision applying to "any conduct directed against the customer." See Wis. Stat. § 425.107(1) (emphasis added). Both results conflict with the legislature's textually expressed directive that we "liberally construe[] and appl[y]" the Act "to promote" the "protect[ion of] customers against unfair, deceptive, false, misleading and unconscionable practices by merchants." Wis. Stat. § 421.102(1), (2)(b).

¶50 At bottom, "proceeding" should carry its common, ordinary, and accepted meaning in Wis. Stat. § 425.102. The legislature and our case law require it to because nothing in the surrounding context justifies a departure from that interpretation. And, importantly, applying the common, ordinary, and accepted meaning here offers the additional benefit of satisfying the "cardinal rule" that we "favor an interpretation that will fulfill the [textually expressed] purpose of the statute over an interpretation that defeats the manifest objective of the act." See, e.g., State v. Davis, 2001 WI 136, ¶13, 248 Wis. 2d 986, 637 N.W.2d 62.

C

¶51 Applying the common, ordinary, and accepted meaning of "proceeding," I conclude that "other proceedings" includes a

9

non-judicial repossession. A non-judicial repossession is a legally prescribed process for enforcing a legal right. The statute prescribes the initiating notice, the 15-day wait period, and the prohibitions against both "breach[ing] of the peace" and entering "a dwelling used by the customer as a residence." Wis. Stat. § 425.206(1)(d)-(2). It matters not that the legislature made a policy decision to cut out the expense and time of litigation. Nothing in that policy choice indicates a simultaneous desire to foreclose a customer in Duncan's position from even requesting judicial scrutiny of unconscionable creditor conduct. Quite the opposite. The legislature directs us to "liberally construe[] and appl[y]" the entire Act to "protect customers against . . . unconscionable practices by merchants." See Wis. Stat. § 421.102(1), (2)(b). Put simply, the statutorily prescribed non-judicial repossession process to enforce a creditor's right to collateral plainly constitutes an "other proceeding[] brought by a creditor to enforce rights arising from [a] consumer credit transaction[]" under Wis. Stat. § 425.102.

¶52 Before concluding that Duncan can bring her unconscionability claim here, I address one last wrinkle. At common law, unconscionability claims arose defensively. That is precisely the posture Duncan is in here, albeit not in the traditional sense. Duncan raises unconscionability as a defense to Defendants enforcing their right to repossess her car. Had that repossession commenced via a replevin action, Defendants would have filed a complaint and Duncan would raise

10

unconscionability in her answer or some post-judgment filing if the unconscionable conduct occurred during or after the repossession. But a non-judicial repossession dispenses with these traditional pleadings. Therefore, Duncan can raise unconscionability only in her own complaint. That is of no moment because when it comes to pleadings, this court considers not their form or title but their substance. See, e.g., Wis. Pub. Serv. Corp. v. Arby Const., Inc., 2012 WI 87, ¶37, 342 Wis. 2d 544, 818 N.W.2d 863 (observing that this court looks "beyond 'hypertechnical'" labels to the pleading's actual "substance"). Accordingly, Duncan may raise unconscionability even under a pleading technically labeled "complaint" because its substance remains a defense to a creditor's non-judicial repossession.

## II

¶53 I conclude that Duncan could raise an unconscionability defense to Defendants' non-judicial repossession. Here, however, her allegations do not as a matter

11

of law rise to the level of unconscionable.[3]  Therefore, I concur in the court's ultimate mandate and join all but ¶29 and ¶¶31-34 of the majority/lead opinion.

---

[3] The court decides unconscionability claims "as a matter of law."  Wis. Stat. § 425.107(1).  Duncan alleges that in addition to unlawfully entering her "dwelling," Defendants engaged in unconscionable behavior by obfuscating and misleading her as to the cost to redeem her car; charging her nearly one-sixth of the car's original value to redeem it; providing her limited time to pay the redemption fee; vaguely referencing the possibility of additional fees; denying Duncan an opportunity to inspect the car's post-repossession condition before redeeming it; and communicating with Duncan in a manner that was "rude and aggressive," so much so that Duncan eventually contacted the police.  Accepting these statement as true and upon considering the factors listed in § 425.107(3), I conclude that the Defendants' conduct, while very troubling, did not rise to the level of unconscionable as a matter of law.  Therefore, I agree that on remand the circuit court need not address Duncan's unconscionability claim.

¶54 PATIENCE DRAKE ROGGENSACK, J. *(dissenting)*. The court of appeals defined "dwelling," as employed in Wis. Stat. § 425.206(2)(b), by choosing an administrative rule definition that by the definition's explicit terms applies only to Wis. Stat. § 422.419(1)(a). In so doing, the court of appeals avoided a plain-meaning analysis of § 425.206(2)(b) and the rules of statutory interpretation that we have repeated and repeated in countless cases since 2004.

¶55 The majority opinion follows the errant lead of the court of appeals.[1] Instead of interpreting "dwelling" within the structure of the statute in which it appears, e.g., "used by the customer as a residence," and instead of relying on Danelle Duncan's own statements that she never lived or resided in the apartment building's garage, the majority opinion ignores a plain-meaning analysis of Wis. Stat. § 425.206(2)(b). Rather, it patches together a hodgepodge of theories in order to affirm the court of appeals. Because I conclude that the plain meaning of § 425.206(2)(b) does not apply to the apartment building's garage, which Duncan shared with many others and has said in two court proceedings that she has never lived or resided in, I would reverse the court of appeals and affirm the summary judgment granted by the circuit court. Therefore, I respectfully dissent from the majority opinion.

## I. BACKGROUND

¶56 Duncan purchased a vehicle that she financed with an installment sales contract with the dealership. The dealership

---

[1] Majority op., ¶¶14-16.

1

assigned the contract to Wells Fargo, and Wells Fargo then became the lien holder for Duncan's vehicle.

¶57 Duncan defaulted on her loan, and on February 26, 2015, Wells Fargo gave her notice of the right to cure the default by paying $887.15. Duncan did not exercise her right to cure the default. On July 30, 2015, Wells Fargo gave Duncan a second notice of right to cure, this time by paying $1,907.76. Again, Duncan did not cure the default. Wells Fargo sent her a third notice of right to cure by paying $1,372.70. Once again, Duncan did not cure the default.

¶58 Therefore, pursuant to Wis. Stat. § 425.205(1g)(a), Wells Fargo gave notice to Duncan that it intended to repossess her vehicle. The notice told Duncan that she had the right to demand that Wells Fargo proceed through a court action for replevin, and that if she did so, Wells Fargo would not proceed with repossession until after a court judgment was issued. Duncan made no response to the statutory notice of intent to repossess that Wells Fargo had provided.

¶59 Wells Fargo then retained Greg Strandlie's company, Asset Recovery Specialists ("ARS"), to proceed with non-judicial repossession of the vehicle. Duncan lived in a large, multi-story apartment building, where she rented an apartment and also separately rented a space in the apartment building's garage that was located under the building.

¶60 On January 27, 2016, ARS went to the apartment building where Duncan lived to locate the vehicle. ARS found Duncan's vehicle in the large multi-vehicle garage under the

apartment building. There was no sign at the entrance of the garage indicating that access was restricted, and the vehicle entry door was open when ARS arrived.[2] A maintenance man was present during the process of repossessing the vehicle, and he never spoke with ARS personnel or raised any objection. Accordingly, ARS towed Duncan's vehicle out of the apartment building's garage. The garage door remained open when ARS left.

¶61 On February 3, 2016, Duncan contacted the City of Madison's West Police District, saying that she wanted to have criminal charges filed against the repossession company that took her car. She "felt her underground apartment parking garage was part of her dwelling." Upon investigation, the officer visually verified that there were no signs or postings indicating "no trespassing" at the apartment building's garage and that a maintenance man saw the repossession from the open garage on January 27, 2016.

¶62 After checking with the city attorney's office in Madison, where the officer was told that no Madison Ordinance applied to ARS's entry into the apartment building's garage, the criminal investigation that Duncan requested was closed.

¶63 Duncan then brought suit in the federal court for the Western District of Wisconsin against ARS, Greg Strandlie and

---

[2] There is a photo of a sign at the front of the building that said "Resident Parking Only Unauthorized Violators Will Be Towed at Vehicle Owner or Operator's Expense." The record does not disclose the purpose of that sign, but it is likely that it applied to the out-of-doors parking that tenants had available too. The photo of the car door at the rear of the building, has no sign of any type.

Wells Fargo. As part of its proceedings, the district court found there "are no living quarters, places to sleep, cook, eat, watch television, use a restroom or bathe or shower in the garage area, [and that] Duncan admits that she has never lived or resided in the garage."[3] The court made various other findings relative to her federal claim and then granted the defendants' motion for summary judgment in part.[4] It dismissed her federal claim and any portion of her state claims against Wells Fargo that was based on alleged unlawful retention of Duncan's personal property.[5]

¶64 Duncan then filed suit in Dane County Circuit Court.[6] The circuit court found that Duncan did not dispute the facts as found by Judge Conley in district court, but that the "real" issue was a question of law.[7] The circuit court focused its efforts on whether ARS complied with the Wis. Stat. § 425.206(2)(b) directive that in taking possession of collateral a merchant may not "[e]nter a dwelling used by the customer as a residence except at the voluntary request of a customer." After noting that ch. 425 does not define "dwelling," the court recognized that "dwelling" has various

---

[3] Duncan v. Asset Recovery Specialists, Inc., No. 16-cv-530, 2017 WL 2870520, at *3 (W.D. July 5, 2017), aff'd, 907 F.3d 1016 (7th Cir. 2018).

[4] Id., at *7.

[5] Id.

[6] The Honorable Stephen E. Ehlke presided.

[7] Duncan v. Asset Recovery Specialists, Inc., No. 17CV1704, at 3 (op. issued June 19, 2019).

statutory definitions.[8]   For example, the circuit court noted that Wis. Stat. § 101.71 defines dwelling as:

> [A]ny building that contains one or more dwelling units.  "Dwelling unit" means a structure or that part of a structure which is used or intended to be used as a home, residence or sleeping place by one person or by two or more persons maintaining a common household to the exclusion of all others.[9]

The court also considered part of the criminal code, Wis. Stat. § 943.13, "Trespass to Land," that defines "dwelling unit" as "a structure or that part of a structure which is used or intended to be used as a home, residence or sleeping place by one person or by two or more persons maintaining a common household to the exclusion of all others."[10]

¶65 The circuit court then found that "it is undisputed that Ms. Duncan did not have a right to exclude others from her apartment building's garage.  Rather, the garage has over 50 parking spaces for use by the building's tenants with no tenant having a right to exclude any other tenant or person from the area.  This is in contrast to, for example, single-family homes where owners do have exclusive control over their garage."[11]  The circuit court further found that the "parking garage was remote and on a different floor than her apartment [and that] the garage offers no use that is primarily or intimately tied to the use of her apartment, for example, sleeping, eating or

---

[8] Id. at 8.

[9] Id. at 9.

[10] Id. at 9-10.

[11] Id. at 10-11.

conducting her private life."[12]  The circuit court concluded that the apartment building's garage did not come within the statutory term, "dwelling," in Wis. Stat. § 425.206(2)(b). Accordingly, it granted defendants' motion for summary judgment, and dismissed the amended complaint.[13]

¶66 Duncan appealed, and the court of appeals reversed. The court of appeals acknowledged that "dwelling" is not defined in the statutory text of the Wisconsin Consumer Act of which Wis. Stat. § 425.206(2)(b) is a part.[14]  The court of appeals also concluded that Wis. Stat. § 422.419(1)(a), which precludes certain covenants in consumer agreements, was not at issue here. However, the court of appeals nevertheless concluded that the garage in Duncan's apartment building was part of a dwelling she used as a residence based on Wis. Admin. Code § DFI-WCA 1.392 (July 2007).  It provides, "For the purposes of s. 422.419(1)(a), Stats., the term 'dwelling' shall include, any garage, shed, barn or other building on the premises whether attached or unattached."

## II.  DISCUSSION

### A.  Standard of Review

¶67 This matter involves a review of summary judgment. We independently review a grant or denial of summary judgment as a question of law.  Applegate-Bader Farm, LLC v. DOR, 2021 WI 26,

---

[12] Id. at 14.

[13] Id. at 14-15.

[14] Duncan v. Asset Recovery Specialists, Inc., 2020 WI App 54, ¶22, 393 Wis. 2d 814, 948 N.W.2d 419.

¶15, 396 Wis. 2d 69, 955 N.W.2d 793 (citing Sands v. Menard, 2017 WI 110, ¶28, 379 Wis. 2d 1, 904 N.W.2d 789).

¶68 In order to evaluate the summary judgment decision made by the circuit court, we independently interpret and apply Wis. Stat. § 425.206(2)(b).  In so doing, we determine whether Duncan's vehicle was lawfully repossessed from the apartment building's garage.  As we evaluate the court of appeals' decision, we also interpret and assess the applicability of Wis. Stat. § 422.419 and Wis. Admin. Code § DFI-WCA 1.392 relative to whether ARS's repossession violated § 425.206(2)(b).

¶69 Statutory interpretation and application present questions of law for our independent review.  Wisconsin Legislature v. Palm, 2020 WI 42, ¶14, 391 Wis. 2d 497, 942 N.W.2d 900 (citing Milwaukee Police Ass'n v. City of Milwaukee, 2018 WI 86, ¶17, 383 Wis. 2d 247, 914 N.W.2d 597).  Furthermore, statutory interpretations grounded in undisputed material facts provide questions of law for our independent review.  Westmas v. Creekside Tree Serv., Inc., 2018 WI 12, ¶17, 379 Wis. 2d 471, 907 N.W.2d 68.  We are assisted in our independent interpretation by decisions of the district court, the circuit court and the court of appeals.  Marder v. Bd. of Regents of Univ. of Wis. Sys., 2005 WI 159, ¶19, 286 Wis. 2d 252, 706 N.W.2d 110.

¶70 In the matter before us, we also interpret provisions of Wisconsin's Administrative Code independently, as questions of law.  Orion Flight Servs., Inc. v. Basler Flight Serv., 2006 WI 51, ¶18, 290 Wis. 2d 421, 714 N.W.2d 130.

7

B. Statutory Interpretation

1. General principles

¶71 Statutory interpretation always begins with reading the words the legislature chose to enact in order to apply them and give the statute its full effect. Townsend v. ChartSwap, LLC, 2021 WI 86, ¶12, __ Wis. 2d __, __ N.W.2d __, 2021 WL 5538667 (citing State ex rel. Kalal v. Cir. Ct. for Dane Cnty., 2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110). Statutory words are given their "'common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning.'" Id. (quoting Kalal, 271 Wis. 2d 633, ¶45); Wis. Stat. § 990.01(1).[15]

¶72 Context also is important to determining statutory meaning, as is "'the structure of the statute in which the operative language appears.'" Id., ¶13 (quoting Kalal, 271 Wis. 2d 633, ¶46). If the statute's meaning is plain we usually stop our inquiry. However, as we determine a statute's meaning, we assess whether the statute is ambiguous. A statute is ambiguous if it is capable of being understood by reasonably well-informed persons in two or more senses. Voces De La Frontera, Inc. v. Clarke, 2017 WI 16, ¶15, 373 Wis. 2d 348, 891 N.W.2d 803. Generally, we do not consult secondary sources such

---

[15] Wisconsin Stat. § 990.01 provides in relevant part: "(1) General rule. All words and phrases shall be construed according to common and approved usage; but technical words and phrases and others that have a peculiar meaning in the law shall be construed according to such meaning."

as legislative history unless the language of the statute is ambiguous. Id.

2. Wisconsin Stat. 425.206(2)(b)

¶73 The initial focus of my inquiry is Wis. Stat. § 425.206(2)(b) because the terms, "dwelling used by the customer as a residence," are central to this dispute. "Dwelling" is not defined in ch. 425. It also is not defined in the general definitional section, Wis. Stat. § 421.301, which would then apply to § 425.206.

¶74 However "dwelling" is defined in many other places in Wisconsin statutes, some of the definitions contain similarities. See, e.g., Wis. Stat. § 943.14(1),[16] which defines "dwelling" as "a structure or part of a structure that is used or intended to be used as a home or residence by one or more persons to the exclusion of all others." (Emphasis added.) Wisconsin Stat. § 943.13(1e)(ar)[17] similarly states that "'Dwelling unit' means a structure or that part of a structure which is used or intended to be used as a home, residence or sleeping place by one person or by 2 or more persons maintaining a common household, to the exclusion of all others." (Emphasis added.)

¶75 Wisconsin Stat. § 75.195(1)(a)[18] defines "[d]welling" as "any building that contains one or 2 dwelling units and any

---

[16] Criminal trespass to dwellings, Wis. Stat. § 943.14.

[17] Trespass to land, Wis. Stat. § 943.13.

[18] Extended time for beginning tax foreclosure, Wis. Stat. § 75.195.

land included with that building in the same entry on the tax roll." With subsec. (1)(b) further providing detail that "'[d]welling unit' means a structure or that part of a structure used as a home, residence or sleeping place by one person or by 2 or more persons maintaining a common household, to the exclusion of all others." (Emphasis added.) Wisconsin Stat. § 101.61(1)[19] similarly defines dwelling: "'Dwelling' means any building that contains one or 2 dwelling units. 'Dwelling unit' means a structure or that part of a structure which is used or intended to be used as a home, residence or sleeping place by one person or by 2 or more persons maintaining a common household, to the exclusion of all others." (Emphasis added.) Wisconsin Stat. § 101.71(2)[20] defines dwelling similarly: "'Dwelling' means any building that contains one or more dwelling units. 'Dwelling unit' means a structure or that part of a structure which is used or intended to be used as a home, residence or sleeping place by one person or by 2 or more persons maintaining a common household, to the exclusion of all others." (Emphasis added.)

¶76 Wisconsin Stat. § 425.206 appears in Subchapter II of ch. 425, Enforcement of Security Interests in Collateral. Section 425.206 applies to the non-judicial enforcement of lien rights. I begin by reviewing the term, "dwelling," in the structure of § 425.206 in which "dwelling" appears. It provides in relevant part:

---

[19] Definitions for ch. 101, Wis. Stat. § 101.61.

[20] Definitions for ch. 101 subchapter, Wis. Stat. § 101.71.

(2) In taking possession of collateral or leased goods, no merchant may do any of the following:

(a) Commit a breach of the peace.

(b) Enter a dwelling used by the customer as a residence except at the voluntary request of a customer.

§ 425.206(2). Although, "dwelling" is not defined in regard to portions of statutes that set out provisions that relate to Wisconsin consumer transactions, I note that findings of the earlier trial courts who considered this dispute provide the factual context in which we interpret "dwelling," as that term appears in § 425.206(2)(b).

¶77 For example, the circuit court found that the apartment building's garage contained spaces for more than 50 cars, with no tenant having a right to exclude others, which the circuit court also found was in contrast to single-family homes where there is a right to exclusive control over the garage. Duncan agreed that she did not have the right to exclude others from the apartment building's garage. Therefore, she could not bring suit for criminal trespass to dwellings, pursuant to Wis. Stat. § 943.14 or for trespass to land pursuant to Wis. Stat. § 943.13, which she tried to do before filing in federal district court.

¶78 It is undisputed that Duncan does not sleep in the garage. The district court found that there "are no living quarters, places to sleep, cook, eat, watch television, use a restroom or bathe or shower in the garage area, [and that]

11

Duncan admits that she has never lived or resided in the garage."[21]

¶79 In addition, the "dwelling" identified in Wis. Stat. § 425.206(2)(b) is at least partially defined by the structure of § 425.206(2)(b), which qualifies the "dwelling" as one "used by the customer as a residence." That is, "dwelling" is limited by the use to which the customer puts the dwelling. Stated otherwise, the customer must use the "dwelling" referenced in § 425.206(2)(b) as a residence in order to come within the plain meaning of § 425.206(2)(b).

¶80 Customer is an often utilized term. See, e.g., Wis. Stat. § 421.301(9) (addressing a "[c]onsumer credit sale" wherein a "customer" enters into such a transaction). Duncan purchased the vehicle in a consumer credit sale; therefore, she is a "customer."

¶81 "Residence" is undefined, but it has a commonly understood meaning as the place where one actually lives.[22] Here, "dwelling" must be the place used by the customer, Duncan, as a residence. Therefore, in order to fit within the structure of Wis. Stat. § 425.206(2)(b), the apartment building's garage must be the place where Duncan actually lives——where she resides. She has admitted that she never lived or resided in the apartment building's garage, and the district court and the

---

[21] Duncan, 2017 WL 2870520, at *3.

[22] Residence: "the place where one actually lives as distinguished from his domicile or a place of temporary sojourn." Webster's New Collegiate Dictionary 984 (1974).

12

circuit court both so found. Instead, she rented a parking space in a garage shared by other residents and maintained by a third-party apartment owner. Therefore, based on the plain meaning of the statute that the legislature enacted, and undisputed material facts, I conclude that the apartment building's garage where Duncan parked her car is not a "dwelling" within the meaning of § 425.206(2)(b).

### 3. Wisconsin Stat. § 422.419(1)(a)

¶82 The majority opinion and the court of appeals brought Wis. Stat. § 422.419 into this controversy. It provides:

(1) No contract evidencing a consumer credit transaction may contain any provision by which:

(a) The merchant or other person acting on the merchant's behalf is given authority to enter the customer's dwelling or to commit any breach of the peace in the course of taking possession of collateral securing the transaction;

(b) The customer waives any right of action against the merchant, or other person acting on the merchant's behalf, for any breach of the peace or other illegal act committed in the course of taking possession of such collateral; or

(c) The customer executes a power of attorney or similar instrument appointing the merchant, or other person acting on the merchant's behalf, as the customer's agent in the taking of possession of such collateral.

§ 442.419(1).

¶83 It is undisputed that Wis. Stat. § 422.419 has absolutely no relevance to the contract by which Duncan purchased the vehicle. All parties agree that the consumer credit sales contract Duncan entered into was lawful in all respects.

13

¶84 Then why did the court of appeals and the majority opinion bring Wis. Stat. § 422.419(1)(a) into their decision making? It appears that they did so for two reasons: First, to avoid a plain-meaning statutory interpretation analysis, which we have directed be employed in countless decisions since Kalal was issued in 2004; and second, to insert Wis. Admin. Code § DFI-WCA 1.392 into their discussions of "dwelling" and reach a result that would not occur if they had undertaken a plain meaning analysis of Wis. Stat. § 425.206(2)(b).

¶85 As I have explained above, a plain meaning analysis of Wis. Stat. § 425.206(2)(b) unambiguously demonstrates that "dwelling" is restricted by the use to which Duncan put the apartment building's garage. She never resided or lived there. Furthermore, a common meaning of dwelling is a place where one sleeps and from which one can exclude all others. The undisputed testimony shows that the apartment building's garage does not meet the restrictive statutory structure of § 425.206(2)(b) nor does it meet common definitions of "dwelling."

¶86 Let's look at Wis. Admin. Code § DFI-WCA 1.392. It provides, "For the purposes of s. 422.419(1)(a), Stats., the term 'dwelling' shall include, any garage, shed, barn or other building on the premises whether attached or unattached." (Emphasis added.) Note that, in addition to expressly limiting the rule's application to Wis. Stat. § 422.419(1)(a), "dwelling" within Wis. Admin. Code § DFI-WCA 1.392 is not restricted by the manner in which a customer uses it, as "dwelling" is by the

14

structure of Wis. Stat. § 425.206(2)(b). Stated otherwise, Duncan would not have to live or reside in the shed or barn to cause it to be a "dwelling" within Wis. Admin. Code § DFI-WCA 1.392.

¶87 The court of appeals' decision[23] avoids a plain-meaning interpretation of Wis. Stat. § 425.206(2)(b) to seek a different result than a plain-meaning interpretation will permit. The majority opinion's use of Wis. Admin. Code § DFI-WCA 1.392 is less direct than that of the court of appeals, but nevertheless it employs Wis. Admin. Code § DFI-WCA 1.392 to support its analysis.[24] Furthermore, the majority opinion's hodgepodge of definitions totally ignores the structure of § 425.206(2)(b) which limits "dwelling" according to how the customer uses that space. Again, it appears the majority opinion did so to avoid the plain meaning of § 425.206(2)(b) and to obtain a result that the plain meaning of the words the legislature enacted will not permit.

¶88 Our directives on statutory interpretation assist judges in keeping their personal policy preferences out of their decisions. They provide certainty in the law based on the words the legislature chose to enact. When courts avoid our directives, they take away those protections and replace them with personal policy preferences that then drive decisions that follow.

---

[23] Duncan, 393 Wis. 2d 814, ¶¶27, 28.

[24] Majority op., ¶¶14-16.

15

### III. CONCLUSION

¶89 The court of appeals defined "dwelling," as employed in Wis. Stat. § 425.206(2)(b), by choosing an administrative rule definition that by the definition's explicit terms applies only to Wis. Stat. § 422.419(1)(a). In so doing, the court of appeals avoided a plain-meaning analysis of § 425.206(2)(b) and the rules of statutory interpretation that we have repeated and repeated in countless cases since 2004.

¶90 The majority opinion follows the errant lead of the court of appeals.[25] Instead of interpreting "dwelling" within the structure of the statute in which it appears, e.g., "used by the customer as a residence," and instead of relying on Duncan's own statements that she never lived or resided in the apartment building's garage, the majority opinion ignores a plain-meaning analysis of Wis. Stat. § 425.206(2)(b). Rather, it patches together a hodgepodge of theories in order to affirm the court of appeals. Because I conclude that the plain meaning of § 425.206(2)(b) does not apply to the apartment building's garage, which Duncan shared with many others and has said in two court proceedings that she has never lived or resided in, I would reverse the court of appeals and affirm the summary judgment granted by the circuit court. Therefore, I respectfully dissent from the majority opinion.

¶91 I am authorized to state that Chief Justice ANNETTE KINGSLAND ZIEGLER and Justice REBECCA GRASSL BRADLEY join this dissent.

---

[25] Majority op., ¶¶14-16.

16